MUNSON v. ENSOR *et al.*, *Appellants.*

1. **Instrument Affecting Real Estate** : REGISTRY ACT : NOTICE.
An agreement, made at the time of executing a deed of trust,
wherein the beneficiaries promise the grantor that they will not
sell under the deed until they have sustained a loss as sureties on
the grantor's bond in a criminal proceeding, such suretyship being
the consideration for the note secured by the deed of trust, is a
part of the deed and is an instrument affecting real estate. It
comes within the registry act (R. S., sec. 693), and should be
acknowledged and recorded to be valid as to others than the parties
thereto and those affected with actual notice.

2. **Purchaser by Quit-Claim Deed** : TITLE : NOTICE. A purchaser
for value by quit-claim deed is as much within the protection of
the registry act as one who becomes a purchaser by a warranty deed,
and he acquires the title, as against a prior unrecorded deed of
which he did not have actual notice.

3. **Deed of Trust** : SALE, NOTICE OF. A sale under a deed of trust
is not invalid because the notices thereof were not signed by the
trustee, nor because all of the beneficiaries did not request a sale,
where the notices were signed in the name of the trustee by the
attorney who prepared and posted them, and the sale was made
by the trustee in person and was fair and open.

*Appeal from Nodaway Circuit Court.* — HON. H. S.
KELLEY, Judge.

REVERSED.

*David Rea* and *Thomas H. Ensor* for appellants.

(1) Appellant is a *bona-fide* innocent purchaser for
value of the real estate sought to be redeemed, without
any notice of any equity of respondent therein, and
should hold the title thereto as against respondent in
this action. The law is too well settled on this point to
require citation of numerous authorities. Story's Equity
(7 Ed.) sec. 409 ; *Digby v. Jones*, 67 Mo. 104 ; *Jones v.*

*Savings Inst.*, 67 Mo. 109. (2) Appellant acquired title by a warranty deed. His grantor held under quit-claim deeds. The law is that a purchaser from a grantee in a quit-claim deed, by deed containing covenants of warranty, who has paid a valuable consideration therefor, need not inquire for equities, but is to be regarded as a *bona-fide* purchaser without notice. *Winkler v. Miller*, 6 N. W. Rep. 698. The same construction is tacitly admitted by court and counsel in *Corbin v. Sullivan*, 47 Ind. 356. (3) Quit-claim deeds containing the words "remise, release, and forever quit-claim" are sufficient to convey title to land. *Anglade v. St. Avit*, 67 Mo. 434; *Wilson v. Albert*, 89 Mo. 537. (4) Respondent is estopped from showing that the deed of trust and note mentioned therein were given for any other purpose than therein recited. *Durette v. Briggs*, 47 Mo. 356 ; *Dickson v. Anderson*, 9 Mo. 156 ; *Hasenritter v. Kirschhoffer*, 79 Mo. 239 ; *Stoutimore v. Clark*, 70 Mo. 471; 1 Greenl. on Evid. (13 Ed.) secs. 22, 23, 24, 26, and notes ; Herman on Estoppel, sec. 333 ; Bigelow on Estoppel (2 Ed.) 266, 267, 268, and note 1 ; 3 Wash. on Real Prop. (3 Ed.) chap. 2, sec. 6, paragraphs 25, 26 and 27.

*William Ellison* for respondent.

(1) The sale under the deed of trust executed by respondent to the bail was fraudulent and void, and did not foreclose his equity of redemption, because (69 Mo. 52) (*a*) The payees in the note (the bail) did not request the trustee to sell, and by the terms of the trust deed, he had no power to sell until requested by them. (*b*) The trustee in the deed of trust did not advertise the property for sale. He did not know it was advertised. He had no voice in appointing the day of sale, or in determining what the notices of sale should contain, or when, or where they should be posted. *Bales v. Perry*, 51 Mo. 449 ; 69 Mo. 426; 50 Mo. 22; 2 Jones on Mort. (3

Ed.) sec. 1862. (c) The trustee had no right to sell the property until the bail should be compelled to pay out something by reason of their suretyship. 1 Jones on Mort. (3 Ed.) secs. 64, 379, 384; 2 Jones on Mort., secs. 1187, 1188, 1189, 1489; 81 Mo. 532; *Borum v. Reed*, 73 Mo. 461: 69 Mo. 52. Parol evidence was admissible to connect the deed of trust and the defeasance, and to show that the latter was lost. 1 Jones on Mort. (3 Ed.) secs. 248, 323, 324; 23 Ill. 648. (d) The nature of the relation between the bail and respondent was that of confidence and trust, and it was unlawful for them to purchase the property for their own benefit. *Thurston v. Prentis*, 1 Mich. 193; *Hoyt v. Martense*, 16 N. Y. 231; 1 Jones on Mort., sec. 332; Perry on Trusts, secs. 197, 206, 210; 58 Mo. 537. (2) The respondent is not precluded from insisting on his equities in the premises, and redeeming the property by reason of the subsequent transfers to Maggie J. and her father-in-law, Joseph Ensor. 1 Perry on Trusts (2 Ed.) sec. 298; *Witham v. Brooner*, 63 Ill. 344; *Kay v. Scates*, 78 Am. Dec. 399, and note on p. 406; 2 Story's Eq. Jur. (6 Ed.) sec. 1502; *Nelson v. Wishon*, 68 Mo. 387; *Bone v. Childs*, 10 Pet. 177; *Staffel v. Schroder*, 62 Mo. 147; *Mann v. Best*, 62 Mo. 491; *Mason v. Black*, 87 Mo. 329; *Tydings v. Pitcher*, 82 Mo. 379; 62 Mo. 473; 84 Mo. 352.

BLACK, J.—This was a suit to redeem a house and lot in Quitman, Nodaway county, from a sale under a deed of trust. The plaintiff, Munson, stood indicted for a felonious assault, and Mr. Hilgerth and five other persons were the sureties on a recognizance for his appearance on the first Monday of March, 1881, in the circuit court of that county. On the twenty-sixth of November, 1880, plaintiff made the deed of trust on the property in question to Montgomery, as trustee, to secure a note of eighteen hundred dollars, payable to the sureties on or before the first of March, 1881, the purpose being to

save harmless the sureties. Plaintiff did not appear, and on the seventh of March, 1881, a forfeiture of the recognizance was entered ; and on the next day but one, the property was advertised for sale under the deed of trust, and was sold and bid in, at three hundred dollars, on the ninth of April, 1881, by Mr. Graves, who took a deed to himself in trust for the sureties. Graves by two quit-claim deeds, one dated in July, 1881, and the other in January, 1882, conveyed the property to Maggie J. Ensor for four hundred dollars ; she and her husband, Thomas Ensor, conveyed this and another parcel of land to Joseph Ensor, father of Thomas Ensor, by warranty deed, dated the thirty-first of December, 1881, for the consideration of fifteen hundred dollars. After the date of the trustee's sale, and before the date of either deed to Mrs. Ensor, the sureties surrendered Munson to the sheriff. The forfeiture of the recognizance was then set aside upon the payment of the costs by the sureties, which amounted to $317.45. Plaintiff then procured other bail, was thereafter convicted, and after serving out his three years term in the penitentiary, filed this bill.

1. At the time Munson made the deed of trust, some of the sureties then present gave him a writing signed by them, which was never recorded and appears to have been lost. There is a conflict in the evidence as to its contents ; but the weight of the evidence is, that these sureties thereby agreed that a sale under the deed of trust should be made when and only after they had sustained a loss, and then to reimburse them for moneys actually paid out on account of the recognizance. This was the only consideration for the note. This agreement and the deed of trust were parts of one and the same transaction, and are to be so treated. At the time of the trustee's sale, the sureties had paid out nothing on account of their suretyship. The sale was, therefore, premature, for the contingency had not arisen upon

which the trustee had a right to sell the property. As between the plaintiff and the sureties and Graves, who held the title for them, the sale would be set aside, and the plaintiff allowed to redeem.

But a different question arises as against the appellant, Jacob Ensor. When Graves sold the property to Mrs. Ensor, it was advertised and about to be sold under a prior deed of trust. The sureties had then paid for Munson $317.45, and Mr. Baird, one of them, and the business partner of Thomas Ensor, acted as the agent of Mrs. Ensor in making the purchase, procuring a loan for her therefor, and,paying off the incumbrance, subject to which she purchased the property. Baird says he was not present when the deed of trust was executed, did not sign the agreement made by some of the sureties, and had no knowledge of it. It is quite clear Mrs. Ensor had no knowledge of that or any such agreement. Besides, it is shown beyond all doubt that Joseph Ensor purchased the property in good faith, paid for it in the discharge of mercantile debts owing by the son, and had no notice of any of the prior transactions, save that imparted by the recorded deeds.

Mrs. Ensor acquired the property by quit-claim deeds, and it has been often stated, as a general proposition, that one who acquires a title by a quit-claim deed is not to be regarded as a *bona-fide* purchaser without notice. The general proposition is very much modified by our recording act. Section 693, Revised Statutes, provides: "No such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the recorder for record." The words, "such instrument," refer to the preceding sections, and include "every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity." These instruments must also be acknowledged. The object of the statute is well stated

in *McClurg v. Phillips*, 57 Mo. 214, where it is said: "These several sections of the registry act clearly indicate that it was the intention to embrace not only legal conveyances or sealed instruments, but all instruments in writing affecting real estate in law or equity. There is no reason why contracts not under seal, affecting real estate as well as sealed instruments or technical conveyances, should not be recorded. The object of the registry act was to abolish the equitable doctrine of notice in regard to all instruments in writing affecting real estate."

The law determines what contracts in respect of real estate must be in writing; they must be acknowledged and recorded, and if this is not done they are pronounced invalid, except as between the parties and persons having actual notice thereof. A purchaser for value by quit-claim deed is as much within the protection of the registry act as one who becomes a purchaser by a warranty deed. This is the clear effect of the statutes, and the courts have no power to repeal them. Hence it was held in *Fox v. Hall*, 74 Mo. 315, that a purchaser by quit-claim deed for value acquired the title as against a prior unrecorded deed of which he did not have actual notice. The same doctrine was again asserted in *Willingham v. Hardin*, 75 Mo. 429; *Campbell v. Gas Co.*, 84 Mo. 352; and by a majority of the court in *Sharp v. Cheatham*, 88 Mo. 510. This is the law in Illinois (*Brown v. Coal Co.*, 97 Ill. 214), and, it is believed, in many other of the states.

Cases of this and other courts are often cited as showing a different result, but from a careful consideration it will be seen that most of them have to do with equities which arise from transactions or a state of facts not required to be spread upon the records, or from some peculiar expression in the quit-claim deed. Here the deed is "remise, release, and forever quitclaim the following described lot," etc.—a form of conveyance in

common use. The writing here in question did affect real estate. It materially changed the terms of the deed of trust. It was just such an instrument as should have been acknowledged and recorded, and, this not having been done, it was, and is, invalid, both as to Mrs. Ensor and the appellant, who had no notice of it, and were purchasers for value.

2. The deed made by the trustee in the deed of trust conveys the property to Henry Graves, to be by him held in trust for said Michael Hilgerth and others, naming them. This, it is contended, created but a naked trust in Graves, and that the first sections of our statute of uses and trusts passed the legal title directly to Hilgerth and others, and that Mrs. Ensor acquired no title by her quit-claim deed, and conveyed none by the warranty deed to Joseph Ensor. We do not consider it necessary to express an opinion as to whether the statute passed the legal title to Hilgerth and others or not. It is shown that all of these persons, except Castillo, signed a written order on Graves to make a deed to Mrs. Ensor, and that afterwards he gave a like order, and that the two quit-claim deeds were made pursuant to these orders, and that the beneficiaries received their respective shares of the consideration paid by her. As between her, Graves, and these beneficiaries, she had, and has, a right to all the title which appeared to be in them on the face of the then recorded deeds, and this right she gave to her grantee. The beneficiaries, though parties to this suit, make no claim to the property. Plaintiff having failed to place the agreement modifying the terms of the deed of trust upon record, it is, as to her and her grantee, invalid. As against them, the plaintiff has no equities whatever, on account of that agreement, and hence no right to redeem because of it.

3. The notices of sale were not signed by the trustee, nor did all of the beneficiaries request a sale. The

notices were, however, signed in the name of the trustee by the attorney who prepared and posted them, and the trustee made the sale in person, and it was fair and open. The beneficiaries all claimed the benefit of the purchase, and, as to them, it is but the common occurrence of one or two persons attending to a matter in which many are interested. The present case does not come within the rule stated in *Bales v. Perry*, 51 Mo. 449.

The property was sold to Mrs. Ensor for its fair value, considering the incumbrance thereon. Plaintiff made no claim to the property of her while she was in possession, though then in Quitman, and we are satisfied the judgment should be reversed and the petition dismissed, and it is so ordered. All concur, except Ray, J., who is absent.