Ebersole v. Rankin.

## EBERSOLE *et al.* v. RANKIN, *Appellant*

### DIVISION ONE.

1. **Ejectment: PARTIES: PRACTICE.** It may often become necessary to make both trustee and *cestui que trust* parties to an action in ejectment, to meet the possible developments in the case, and it cannot be determined on demurrer before answer or the submission of evidence, whether such joinder is necessary in a particular case.

2. ———: **COMMON SOURCE OF TITLE.** In ejectment where both parties claim through a common source of title, it is unnecessary to go back of that title. It is sufficient for plaintiff to declare his title from the common source.

3. ——— : ——— : **ATTORNEY AND CLIENT.** Letters from an attorney to his client containing information in regard to the latter's land obtained from the client by reason of the relation of attorney and client are inadmissible in ejectment against the latter's grantee.

4. ——— : ——— : ———. Letters of an attorney and agent prejudicial to his client's interest, written after he as such agent had sold the client's land, are not admissible against his vendee in an action of ejectment.

5. **Evidence: LOST DEED: PROOF OF CONTENTS.** Proof of the loss or destruction of a deed will authorize the introduction of evidence of its contents, and execution as required by law.

6. **Deed, Delivery and Acceptance of.** Delivering of a deed to the grantee and acceptance of it by him are essential to its validity.

7. **Innocent Purchaser: QUITCLAIM DEED: NOTICE OF PRIOR UNRECORDED DEED.** A purchaser for value by quitclaim deed is as much within the protection of the registry act as one who purchases by warranty deed, and he acquires title against a prior unrecorded deed of which he did not have actual notice.

*Appeal from Atchison Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED

Ebersole v. Rankin.

*L. D. Ramsay* for appellant.

(1) The court erred in overruling defendant's motion to strike out the amended petition and in overruling the demurrer thereto, for the reason that it was a complete change of parties to the action. *Gibbons v. Gentry*, 20 Mo. 268; *Baker v. Noll*, 59 Mo. 265. (2) The court erred in admitting in evidence the records of the deed from James A. Dick to Joseph W. Blackburn and of the deed from Joseph W. Blackburn to Christian A. Ebersole, for the reason that they are not acknowledged by any officer authorized to take acknowledgments of deeds, nor do the certificates in either case show that the grantor was personally known to the officer, nor was there any offer to prove execution of original deeds. G. S. 1865, sec. 9, p. 444; G. S. 1865, secs. 13, 14, p. 445; *Callaway v. Fash*, 50 Mo. 420. The deeds were only entitled to record on proper proof or acknowledgment (G. S. 1865, sec. 24, p. 446); and even then were admissible in evidence only on oath or affidavit that the original was lost. G. S. 1865, sec. 30, p. 447; *Hoskinson v. Adkins*, 77 Mo. 537. Sections 2305 and 2366 of Revised Statutes of 1879 apply only to conveyances made prior to 1855, and do not aid respondents. *Bishop v. Schneider*, 46 Mo. 472; *Ryan v. Carr*, 46 Mo. 483. And then when the record is less than thirty years old, only admissible on due proof of the execution of the original instrument. R. S., sec. 2306; *Crispin v. Hannovan*, 72 Mo. 548. Section 2310 of the Revised Statutes, only applies to correctly acknowledged deeds. *Gasmer v. Barry*, 28 Mo. 449. (3) The court erred in not finding that the deed from John W. Ebersole to W. A. Rankin was superior to the alleged unrecorded deeds from John W. Ebersole to Christian A. Ebersole, and to Christian Ebersole. No conveyance is valid except between the parties thereto and such as have actual notice thereof until the same shall be deposited with the recorder for record. 1

Wag. Stat., sec. 26, p. 276. And a purchaser under a quitclaim deed ( even if the one under consideration be considered such ) is under the registry act entitled to the same protection, as a purchaser by any other form of deed. *Fox v. Hall*, 74 Mo. 315 ; *Bogan v. Neece*, 75 Mo. 383 ; *Willingham v. Hardin*, 75 Mo. 429 ; *Vance v. Corrigan*, 78 Mo. 94 ; *Chapman v. Simms*, 53 Miss. 154 ; *Munson v. Ensor*, 94 Mo. 304. A purchaser from one who appears of record to be the owner in fee is not bound by equities in favor of a stranger. *Odle v. Odle*, 73 Mo. 289. And the same is true where the purchase is made from the heirs of such a person. So too a record of a conveyance from one apparent stranger to another, as would appear where a link was wanting in chain of title, would be neither actual nor constructive notice to a subsequent purchaser. *Crockett v. Maguire*, 10 Mo. 34 ; *Chicago v. Witt*, 75 Ill. 211 ; *Doolittle v. Cork*, 75 Ill. 354 ; *Butts v. Norcress*, 14 Pick. 224 ; *Losey v. Simpson*, 11 N. J. Eq. 246. Under the statute the notice that will save an unrecorded deed must be an actual notice of its existence, and there is no legal evidence on which the court could find any such knowledge on part of defendants, or Wm. A. Rankin, or parties through whom he obtained the John W. Ebersole title. (4) The court erred in admitting the testimony of John P. Lewis, and of the letters written by him for the reason : *First.* They were confidential communications between him and his client Ebersole. *Second.* There was no evidence that the knowledge he possessed was ever communicated to the Rankins, or either of them, but on the contrary his express statement is that it had not been. *Third.* He was clearly not the agent or attorney of Rankin, and what he may have known was not binding upon Rankin. (5) The court erred in refusing to give or consider any declarations of law to indicate the theory upon which it decided the case. They were asked before the decision was fully announced and

should have been considered. (6) The court erred on the questions of facts; upon the whole evidence the decision should have been for defendant.

*Kelley, Craig & Kelley* also for appellant.

*A. M. Hough* with *M. McKillop* and *John D. Campbell* for respondents.

(1) The chain of title from Dick to John W. Ebersole is complete and perfect as between the parties thereto and all persons having knowledge of the same. *Harrington v. Fortner*, 58 Mo. 468; *Cooley v. Rankin*, 11 Mo. 402; *Caldwell v. Head*, 17 Mo. 561; *Musick v. Barney*, 49 Mo. 458. (2) The deed from Christian Ebersole to George S. King and the deed of John W. Ebersole to Christian Ebersole, of which David Rankin had notice, gave King a perfect title. See authorities last above cited, and *Muldrew v. Robinson*, 58 Mo. 331; *Meier v. Blum*, 80 Mo. 179; *Eck v. Hatcher*, 58 Mo. 235; *Fellows v. Wise*, 55 Mo. 413; *Widdicombe v. Childers*, 84 Mo. 382. (3) The foreclosure of the mortgage from King and wife to Christian "A." Ebersole, and the sheriff's deed to Solomon K. Ebersole in trust for the heirs of Christian Ebersole (respondents), vested the title of said premises in the said heirs of Christian Ebersole (respondents). R. S. 1879, sec. 3938; 51 Mo. 52; Adams on Ejectment, 137 and 238; 3 Redfield on Wills, ch. 10, secs. 88, 89, 90. (4) The mortgage from King and wife to Christian "A." Ebersole being part and parcel of the same transaction of which the deed from Christian Ebersole to King formed a part, though not executed or delivered till after the death of the mortgagee, Christian Ebersole, was nevertheless an agreement to give a mortgage and an equitable mortgage from its date. *Wright v. Shumway*, 1 Bissell, 23, 28; 2 Pomeroy's Equity, sec. 1237; 60 Mo. 498. (5) The

whole transaction shows that the mortgage was intended to be given to Christian Ebersole, and that the middle letter "A" was put into the paper as error and mistake—the said "A" amounts to nothing. *Phillips v. Evans*, 64 Mo. 17; *State v. Black*, 12 Mo. 531. (6) W. A. Rankin got nothing by the quitclaim deed from Dick. Dick had no interest to convey at date of said deed. *Harrington v. Fortner*, 58 Mo. 468; *Cooley v. Rankin*, 11 Mo. 408; *Caldwell v. Head*, 17 Mo. 561. (7) W. A. Rankin got nothing for his deed from King. King had no interest to convey. All his interest in the premises had been sold by the foreclosure of his mortgage to Ebersole. See argument and authorities cited. (8) All that Rankin got by his deed from John W. Ebersole was his interest as heir of Christian Ebersole, viz., the undivided one-ninth. (9) David Rankin having notice of the rights and equities of the respondents at the time of the purchase of said land by him from John W. Ebersole, W. A. Rankin, to whom the deed was made, was bound by that knowledge. *Mann v. Best*, 62 Mo. 491; *Slivers v. Horn*, 62 Mo. 473; *Ridgway v. Holliday*, 59 Mo. 473; *Campbell v. Gas. Co.*, 84 Mo. 352. (10) The records of the deeds and of the proceedings in the circuit [court] of Atchison county, which David Rankin saw prior to his purchase of the lands in controversy, were both actual and constructive notice to him of the rights and equities of the respondents, and binding on W. A. Rankin. (11) The decree of foreclosure in case of Sherer, public administrator, in charge of estate, Christian Ebersole, *v.* George S. King, is the judgment of a court of a general jurisdiction, in which the court had jurisdiction of the parties and subject-matter and cannot be successfully attacked collaterally. It imports absolute verity, and cannot now be contradicted. *Ivernad v. Loberg*, 26 Ill. 179; *Fithian v. Monks*, 43 Mo. 502; *Hardin v. Lee*, 51 Mo. 241; *Brocket v. Brocket*, 53 Mo. 265.

BRACE, J.—This is an action in ejectment for two hundred and forty acres of land in section 36, township 65, range 40, in Atchison county, instituted May 7, 1884, by petition in common form by plaintiffs Christian A. Ebersole, Samuel Ebersole, C. K. Ebersole, Malinda Miller, Mary, Rose and Alice Liety, heirs at law of Christian Ebersole, deceased. Afterwards on motion Effie E. Ebersole, another heir, was made a party plaintiff. The case was tried before the court without a jury on an amended petition, in which all of said heirs were plaintiffs, and by which Solomon K. Ebersole, as trustee of said heirs in one of the deeds in their chain of title, as was alleged, was made an additional plaintiff, and the answer of the defendant, which was a general denial, filed after his motion to strike out the amended petition, and his demurrer thereto had been overruled.

The court refused to give or consider any of the declarations of law asked for by the defendant, found for the plaintiffs for eight-ninths of the land, rendered judgment in their favor for the recovery thereof, for damages and for monthly rents and profits, from which judgment the defendant appeals.

It appeared from the record evidence introduced by plaintiff that James A. Dick being seized in fee simple by warranty deed, dated August 12, 1865, and recorded in said county December 15, 1865, conveyed the premises to Joseph W. Blackburn who, by warranty deed dated October 25, 1865, and recorded August 23, 1866, conveyed the same to Christian A. Ebersole, who by warranty deed dated December 27, 1865 and recorded August 23, 1866, conveyed the same to his brother, John W. Ebersole, who by quitclaim deed, dated June 19, 1880, and recorded July 5, 1880, conveyed the same to William A. Rankin, under whom the defendant in possession holds. Plaintiffs claim that they have acquired the title of said John W. Ebersole as against this quitclaim deed. The defendant claims title under said deed.

The plaintiffs, to support their claim, introduced in evidence a warranty deed purporting to have been executed by Christian Ebersole, the father of the said John W., and to have been acknowledged by him before a justice of the peace in the state of Pennsylvania, dated August 28, 1869, and recorded in Atchison county, May 6, 1870, conveying the premises to George S. King. The record of the proceedings in a suit instituted March 13, 1872, in the Atchison circuit court by said King against the widow and heirs of Christian Ebersole for the specific performance of a contract in writing made by the said Christian Ebersole, deceased, to convey the lands in controversy to said King, alleging the payment to said deceased of $1,440, the consideration therefor, and the death of the said Christian. The contract charged upon in the petition was the foregoing deed which was filed with the petition. The plaintiffs then introduced a notice of *lis pendens*, filed for record the same day, and the final decree in said suit, vesting in the plaintiff all the rights, title and interest of the defendants as heirs at law of the said Christian in the premises.

The plaintiffs then introduced in evidence a mortgage deed to the premises from George S. King *et ux.*, to Christian A. Ebersole, dated August 28, 1869, acknowledged on the fifth of April, 1870, and on the same day filed for record in Atchison county, to secure two promissory notes, of the same date as the mortgage, payable one and two years after date, for the sum of $480 each with ten-per-cent. interest; the record of the proceedings in a suit instituted by Harvey Shires, public administrator in charge of the estate of Christian Ebersole, deceased, at the January term, 1873, of the Atchison circuit court against said King to foreclose said mortgage; a decree of foreclosure in said suit, execution thereon, and a sheriff's deed reciting judgment, levy of execution, advertisement and sale, and conveying "all the right, title and interest of the said

George S. King in said real estate to Solomon K. Ebersole in trust for defendants.

The plaintiffs then introduced parol testimony for the purpose of showing that the title of John W. Ebersole had passed from him to Christian Ebersole before the execution of the quitclaim deed to Rankin; so much thereof as bears upon that question is substantially as follows:

John W. Ebersole testified that he bought the land in controversy of Blackburn; that he and his brother, Christian A., were about to make a trade and so had deed made to Christian; that the trade failed, and afterwards Christian deeded to him; that he paid for the land with his own money; that afterwards when he left home to go to Ohio, his father advanced him $1,000, and also advanced Christian the same amount, and loaned him some money beside; that Christian went to Kansas and broke up; that his father thought Christian owned the lands, and traded with him some way on what Christian owed him; that he did not know this until his father sold to King; that Christian had no interest in the land; that, after his father sold to King and was having trouble with him, his mother wrote to him urging him to deed the land to his father; that he did so with the understanding that he was to have credit on his advancement receipt, or have it destroyed; that his father died about that time; the receipt was not destroyed, and in the distribution of the estate he had to account for his advancement, and did not receive a cent for the land.

Cyrus R. Ebersole testified that John W. made a deed to his father shortly before his death; that he carried the deed to the express office while on his way to school to express to Mr. House, the agent in Missouri, who sold to King; "the deed was wrapped up, I did not see it."

Christian A. Ebersole testified that, after he had deeded the land in controversy to John, John traded it

back to him for land in Ohio ; that he sold the Missouri land to his father before obtaining a deed from John ; that John made a deed to their father instead of to him at his request ; that he sold the land to his father before obtaining a deed from John, so he had John make deed directly to his father before his father's death ; that at the time he traded the Ohio land to John he took from him a deed to the Missouri land but it was never acknowledged.   Thinks he gave it to his father ; thinks it was made in his name ; thinks he made a deed at that time to his father ; that he did know what had become of these deeds ; had never made any effort to find them ; that either Samuel or Emily wrote to John after witness came back from Kansas to have him make second deed ; that he did not see letter ; saw this second deed at home ; it was sent to his father ; that the deed from John to his father was a warranty deed ; and was received by his father through the mail before his father died ; that he claims one-ninth of the land in controversy.

The plaintiffs also introduced in evidence a written contract of retainer between John W. Ebersole and Messrs. Lewis & Ramsey dated May 20, 1880, by which the latter were employed as his attorneys in any suit that might be instituted by him to secure to him his interest in said lands, and eight letters from Mr. Lewis to the said John W., dated respectively March 31, April 21, May 6, May 20, June 16, June 19, July 5 and July 8, 1880, all having reference to the lands in controversy, their recovery by the said John, the condition and nature of his claim thereto, the institution of a proposed suit, compensation for services as attorneys and the final sale of the land to Rankin.   Also two letters from said Lewis to Cyrus R. Ebersole, one dated January 8, the other March 10, 1881.

Plaintiffs also introduced Mr. Lewis who testified that he, as the agent and attorney of John W. Ebersole,

negotiated the sale of the land with David Rankin; that he was not attorney for Mr. Rankin; that he went with Rankin to the courthouse to look at the records. Showed him the chain of title and thinks they looked at the notice of *lis pendens* in the King suit; told him the title appeared to be clear except a part of the deeds were imperfectly acknowledged; thinks he did not show him the decree in that suit; sold him the land for $1,250, he to take a quitclaim deed; that Rankin told him to have the deed made to William A. Rankin, his son, as he understood him; that the land at the time of the sale was worth from $8 to $10 per acre. The plaintiff also introduced other evidence tending to prove that the land at that time was worth from $5 to $10 per acre, probably about $8.

The defendant upon this issue introduced David A. Rankin as a witness whose material evidence was to the effect that he bought the land in controversy for his son, Wm. F. Rankin, but by mistake the deed was made to William A. Rankin; then he and his son exchanged lands; that the land was worth at that time from $5 to $8 per acre; that he never heard of the deed from John W. Ebersole to his father until this suit came up; that he looked over the chain of title with Mr. Lewis and found it straight to John W. Ebersole; that he had now no interest in the land; that he did not remember of having seen either the judgment or *lis pendens* in case of King v. Ebersole Heirs; Mr. Lewis did not tell him of any trouble about the land; said it was all straight on the record to John W. Ebersole except the acknowledgments of some back deeds, but said Ebersole was only willing to give a quitclaim deed. "I thought the title was all right and paid $1,250 for the land. I suppose I saw all there was on the books, aimed to; Mr. Lewis showed me the conveyances; can't say just what I did see on the record; may have seen all there was on both deed records and court records."

Vol. 102—32

The defendant also introduced the will of Christian Ebersole by which he devised all his property to his widow for life or until his youngest child became of age, afterwards to be sold and divided equally among his children deducting advancements, and appointing Solomon K. Ebersole one of his executors who alone acted. Also settlements of said administration showing that the advancements of $1,000 each to his sons, John W. and Christian A., were charged to them in the distribution of their father's estate.

There was other evidence introduced by both the plaintiffs and defendant which will be noticed in the course of the opinion if necessary.

I. The court committed no error in refusing to strike out the amended petition ; the adding of the trustee as an additional party plaintiff did not change the cause of action. The real parties in interest appeared to be the same, and the cause of action was the same in each. There was no defect of parties apparent upon the face of the amended petition, and it could only appear by answer, or on the evidence, that any of the plaintiffs in the amended petition were unnecessary parties ; consequently there was no error in overruling the demurrer. Under our practice in ejectment in which the plaintiffs or some of them may recover under any title which they may show in evidence that gives them a right to the possession and under which the defendant may make any good defense, legal or equitable, and may even have affirmative relief, it may often become necessary to make both trustee and *cestui que trust* parties to the action, to meet the possible developments of the case, and it cannot be determined in the first place on demurrer, before answer or evidence, whether such joinder is necessary in a particular case.

II. On the trial the defendant objected to the introduction of the records of the deeds from Dick to

Blackburn and from Blackburn to Christian A. Ebersole, for the reason that the acknowledgments were defective; but, as both parties claim under John W. Ebersole, it is unnecessary to go back of his title, and pass upon the questions raised by these objections. *Grandy v. Casey*, 93 Mo. 595; *Smith v. Lindsey*, 89 Mo. 76; *Miller v. Hardin*, 64 Mo. 545.

III.   Defendant also objected to all the other record evidence introduced by the plaintiffs pointing out specifically his objections thereto, but as the whole force and effect of this evidence upon the question of title was to show that the title of Christian Ebersole, if any he ever had, had passed from him, and had again returned to his heirs at law, or their trustee, the plaintiff in this case, and in view of the fact that the court refused to declare the law of the case, leaving us at sea as to the theory upon which the case was tried and decided, and as the judgment may be substantially sustained on the merits, if the court found from the evidence that John W. Ebersole, before executing the quitclaim deed to William A. Rankin, executed and delivered to his father a deed, conveying to him the title of the said John to the premises, of which the defendant's lessor had actual notice when he took the quitclaim deed; whether plaintiffs acquired that title as heirs at law of the said Christian, as devisees under his will or as grantees in the sheriff's deed; and as the judgment cannot be sustained unless the court so found, these objections need not be ruled upon *seriatim*, or that evidence noticed, except so far as it may be claimed to have a bearing upon the real question in the case, which is, was such a deed executed and did defendant's lessor have notice thereof? and to these questions our inquiry will be confined.

IV.   Before entering directly upon this inquiry, it may be as well to observe that there is no evidence tendngi to prove nor is it contended that W. A. Rankin, to

whom the quitclaim deed was made, or W. F. Rankin, for whom the purchase was made, had notice of an unrecorded deed from John W. to his father; but it is contended that David Rankin, who purchased the land, and who caused the deed to be made to the said William A., had such notice, and that notice to him was notice to the said William A., and the inquiry upon this branch of the case will be as to whether the said David had such notice.

V. In order to limit the scope of this inquiry, it is well to eliminate at once from consideration so much of the evidence as was unquestionably inadmissible. In doing so the eight letters written by Mr. Lewis, the attorney of John W. Ebersole, to his client, the said John W., disclosing in themselves the relation existing between them as that of attorney and client, and that the information Lewis had in regard to this land was obtained from his client by reason of that relation in the conduct of his client's business, which resulted in the sale thereof to Rankin, admitted in evidence over the objections of the defendant, must be taken out of the case. The only ground suggested in the argument of counsel for the admission of these letters is, that Lewis was in fact acting as Rankin's attorney and not Ebersole's. There is no evidence worthy a moment's consideration to support this assumption; the letters refute it. The contract introduced by plaintiff proved the relation, and all the evidence shows unmistakably that in this whole matter Lewis and Lewis & Ramsay were acting as the agents and attorneys of John W. Ebersole, and that David Rankin was dealing with them at arm's length as such, and there is not the slightest evidence that either of them ever communicated to him any information they may have received from their client, John W., or from any other source, as to an unrecorded deed from him.

The court erred in admitting these letters in evidence, as also the two letters from said Lewis to Cyrus

Ebersole, written long after the trade between David Rankin and Lewis, as the agent and attorney of John W. Ebersole, had been consummated, and the deed executed. Excluding, then, all these letters from consideration, was it shown by the remaining evidence in the case that John W. Ebersole, before executing the quitclaim deed to William A. Rankin, had executed an operative deed of conveyance which passed his title to his father, and did David Rankin have actual notice of such conveyance?

VI. It is contended by counsel for plaintiff that it is sufficiently shown by competent evidence that such a conveyance was executed and delivered by John W. to his father shortly before the death of the latter. While something is said in the testimony of John and Christian about a prior deed from the former to the latter, and in the testimony of the latter about a deed from him to his father, there is no substantial evidence that such deeds were ever executed, and, as to any such deed from John, he testifies positively that such deed was never acknowledged or delivered. Christian testifies it was never acknowledged, and as a whole his evidence is contradictory on this subject and shows that he had little faith that it was ever delivered; in fact counsel for plaintiffs very properly seem to place no reliance upon these supposititious deeds.

As to the deed from John to his father, so far as this evidence discloses, no eyes ever saw it except those of John W. and Christian A. Ebersole; the evidence of Cyrus Ebersole amounted to nothing on this subject. John was in Ohio when and where he says he made his father a deed. His father was living in Pennsylvania with his family. Christian A. was probably at home with his father at that time. John says he made the deed in response to a letter from, and at the request of, his mother. Christian says he made it at his request, and that the letter was written by one of his brothers or sisters. John does not say what he did with it, to whom

he sent it, or whether he sent it to anybody ; from his letters given in evidence by the plaintiffs he was in doubt at the time he employed Mr. Lewis whether it had ever been delivered, as his father died about that time. Christian however testifies that it was sent to his father, was received by him through the mail ; that he thinks he saw it at home before his father died ; that it was a warranty deed, and that he did not know what became of it ; that it was signed by John W. Ebersole and his wife.

This evidence was doubtless sufficient to authorize plaintiffs to introduce in evidence a written instrument purporting to be a deed from John W. Ebersole to his father, coming from the possession of its proper custodian, but no such instrument was offered. Upon proof that such an instrument had been lost or destroyed it would have authorized the introduction of evidence of its contents, but no evidence was offered to prove such loss or destruction, or the contents of the instrument spoken of by the witnesses as a deed, conceding that Christian Ebersole saw it at home before his father's death ; for aught that appears in the evidence that instrument may have been wholly inoperative to convey title to real estate, or operative to convey it only conditionally. It may be in existence to-day in the hands of him who upon the death of Christian Ebersole became its proper custodian ( if the father ever had possession of it ), and who was a party plaintiff in this suit, but who was not called as a witness, as was no other person who ever had it in custody.

There is no evidence that the father ever accepted it on the terms and for the considerations for which it was made. He may have had it in his possession, seen its contents, concluded not to do so, returned it to the mail from whence it came, destroyed it, or he may never have had it in his hands or knew its contents, or he may have been dead or dying when it came. If there was no delivery to, and acceptance by, him in his lifetime, there

was no delivery.   Everything in the evidence about the delivery of this supposed deed from John W. Ebersole to his father is vague, shadowy and uncertain.   The one thing certain about it is, that the receipt of John W. Ebersole for his advancement of $1,000, and which went into the Ohio land, which receipt was to be canceled, credited or given up to him as the consideration for the deed, did not disappear with the father and the supposed deed, but remained the sole tangible relic of this transaction to be taken out of John's share on distribution ; it was so taken out, and the plaintiffs with that consideration in their pockets now seek to recover the land also, upon this evidence of an executed operative deed from John to his father.

The existence of an instrument having been proven, some evidence at least must be given of its loss before parol evidence of its contents can be introduced ; here none is offered ; no effort even made by anybody to find it was shown.   When the loss is properly proven, then its execution in the manner required by law and its contents substantially must be clearly shown.   *Edwards v. Noyes*, 65 N. Y. 125 ; *Wakefield v. Day*, 41 Minn. 344 ; *Loftin v. Loftin*, 1 S. E. Rep. (N. C.) 837.   In this case the evidence does not come up to the standard of these reasonable requirements ; but if they could be disregarded and it could be assumed that John W. Ebersole executed and delivered a valid, operative, absolute deed conveying the premises in fee simple to his father, what evidence is there that David Rankin had notice of such deed ; David Rankin resided in the county in which this land was situate.   It was wild, unoccupied land ; in purchasing he paid a fair value for the land.   The Ebersoles who alone knew of the alleged transaction between the father and his sons were non-residents of the state, their places of residence were unknown to him, and so far as the evidence shows before the deed to him was made neither of them had ever been in the county ; they were strangers to him ; he neither

knew them nor their relations to each other, nor ever before the deed was made had any communication with them. He never received any information in regard to such a transaction either from them or either of them, or from any agent or attorney of theirs or from anyone else. He had actually no knowledge whatever of such transaction. The only source accessible to him for information upon the subject of the title to these lands was the records of the county ; to those he went,. and conceding that he saw everything upon them, and, waiving the consideration of the numerous objections made to their admissibility, they showed him that the legal title to the premises was vested in John W. Ebersole, and nothing therein contained could give him either actual or constructive notice of a deed from John W. Ebersole to his father.

It is, perhaps, not contended that these records would give him such notice, but that they were sufficient to put him on inquiry for such a deed, and, if it afterwards turned out that such a deed had in fact been executed, he is chargeable with notice thereof. This position is untenable. A purchaser for value by quitclaim deed is as much within the protection of the registry act as one who becomes a purchaser by warranty deed, and acquires title against a prior unrecorded deed of which he did not have actual notice. *Munson v. Ensor*, 94 Mo. 504 ; *Drey v. Doyle*, 99 Mo. 459 ; *Sharp v. Cheatham*, 88 Mo. 510 ; *Campbell v. Gas Co.*, 84 Mo. 352 ; *Fox v. Hall*, 74 Mo. 315.

"An important exception to the rule that a quitclaim deed is notice of pre-existing equities is where the equities are of such a character as the registry acts will apply to." *Campbell v. Gas Co., supra.* "The object of the registry acts was to abolish the equitable doctrine of notice in regard to such instruments of writing affecting real estate as for that purpose are required to be recorded." *McClurg v. Phillips*, 57 Mo. 214 ; *Munson v. Ensor, supra.*

The substance of the information derived by Mr. Rankin from the two gentlemen to whom he applied to purchase the land, Mr. Dolph and Mr. Lewis, was the same and no more than these records afforded him, *i. e.*, that the plaintiffs claimed some interest in the land as heirs or otherwise under Christian Ebersole; there is nothing in any of the records pointing to a deed from John W. Ebersole or from which the existence of such a deed could be legitimately inferred. The whole of the proceedings on the record purported to affect nothing, except title derived from Christian Ebersole; they pointed to nothing behind it.

Finding the competent evidence in the case insufficient to support the judgment for the plaintiffs, in the absence of any guide furnished by the trial court as to the methods by which it reached its conclusion, we can account for the result only upon the hypothesis that its judgment must have been largely based upon the letters of Mr. Lewis which should have been excluded. However that may be, their admission was error. The judgment on the legitimate evidence is not for the right party, and will be reversed and the cause remanded for a new trial; SHERWOOD, P. J., and BLACK, J., concurring.