Elliott v. Buffington.

Elliott v. Buffington, Appellant.

Division Two, May 23, 1899.

1. **Swamp Lands:** COMMISSIONER: PAYMENT OF PURCHASE MONEY. Where the evidence shows a conveyance of swamp lands by the State to a county, the appointment by the county court, in accordance with a special act of the legislature, of a commissioner to sell the lands, the payment by a purchaser of 20 per cent of the purchase price and the issuance of a certificate of purchase to him, and the assignment of this certificate to another and the payment by that other of the balance of the purchase price, and a deed from the commissioner conveying the lands to him, there is shown to be a sale and conveyance by the county. And a subsequent conveyance by patent by the county court does not convey any interest in the land.

2. ———: ———: SALE BY THE COUNTY. A sale by a county court of lands belonging to the county is a sale by the county.

3. ———: ———: SALE BY THE COURT. Under the general laws in force in this State in 1883, governing the sale and conveyance of swamp lands, the sale could be made by a commissioner appointed by the county court for the purpose and conveyed by a deed executed by him as such, or could be made by the court and the patent signed by the president of the court and countersigned by the county clerk.

4. ———: RECORD OWNER: PREVIOUS SALE: INNOCENT PURCHASER: QUITCLAIM DEED. One who purchases land for value from him who by the record appears to be the owner, without any knowledge or notice that he had previously conveyed it by an unrecorded deed, acquires the title to the land, although his deed is simply a quitclaim.

5. **Ejectment**: DESCRIPTION IN JUDGMENT: NUNC PRO TUNC CORREC-
TION. Where the petition sought to recover only "that part of the
lands described lying and being on the north and west side of the
Chariton River," and the court's finding was that "plaintiff is entitled
to the possession of the land sued for and described in plaintiff's
petition," and the clerk entered judgment for all the land described
by the government numbers, including that part lying south and east
of the river as well as that lying north and west thereof, the mis-
take is so apparent that the circuit court can correct it by a *nunc
pro tunc* entry based on the records in the case, and no reversal
of the judgment is required.

*Appeal from Chariton Circuit Court.*—HON. W. H.
BROWNLEE, Special Judge.

AFFIRMED ( *with directions* ).

CRAWLEY & SON for appellant.

(1) The two commissioner's deeds from Lee to Kennedy
were unauthorized, and wholly ineffectual to divest Chariton
county of the legal title. (a) Said commissioner's deeds
can not be upheld under the local law of 1861, relating to the
conveyance of swamp lands in Chariton county for two un-
answerable reasons; first, because said local law of 1861 did
not empower the county court to appoint a deed commissioner
to convey said lands, but, on the contrary, by the very terms
of the act itself, imposed upon the clerk of the county court,
*eo nomine*, the duty of executing said conveyances; and sec-
ondly, because the local law of 1861 was repealed by the gen-
eral legislation of 1868 and 1869 on the same subject; con-
sequently it could not have been in force in 1883, when Lee
was appointed commissioner, nor in 1886, when he made said
deeds. This point was settled once and for always, in Pool v.
Brown, 98 Mo. 683. (b) Said commissioner's deeds can
not be upheld under the terms of the order of the county
court of May 8th, 1883, read in evidence by plaintiff and
referred to in said deeds, because said order expressly limits
the authority of said commissioner to the conveyance of

"any swamp and overflow land to purchasers thereof, sold under the orders of this court;" whereas there is no evidence in this record, from beginning to end, either in the recitals of said commissioner's deeds, or elsewhere, showing, or tending to show, any previous sale of the lands by the county court to Kennedy, or any order of said county court directing said deeds to be made to him. The grantees of Kennedy, therefore, claiming under said deeds, no less than Kennedy himself, are as chargeable with notice of the limitations placed by said order upon the authority the county court undertook to confer on said Lee, as though said order were transcribed at large on the face of said deeds. Patterson v. Booth, 103 Mo. 402; Hays v. Perkins, 109 Mo. 102. (c) Said commissioner's deeds can not be upheld under the general statutes governing the sale and conveyance of swamp lands because the law as it stood in May, 1883, when said commissioner was appointed, as well as in 1886, when said deeds were executed by said Lee, required all sales to be made by the county court, and all conveyances to be made by patent, signed by the presiding judge and countersigned by the clerk of said court. R. S. 1879, secs. 6153 and 6154. This method of sale and this method of conveyance were exclusive. There being no sale shown to have ever been made by the county court, and no pretense that there was any order of said court authorizing a conveyance by Lee to Kennedy, said commissioner's deeds are, as conveyances of the legal title, mere nullities, no matter what their value in equity, or as receipts for money paid by the grantee. State v. Bank, 45 Mo. 528; Hutchinson v. Cassidy, 46 Mo. 431; Saline Co. v. Wilson, 61 Mo. 237; Prior v. Scott, 87 Mo. 303; Sturgeon v. Hampton, 88 Mo. 203; Montgomery Co. v. Auchley, 103 Mo. 492; Hooke v. Chitwood, 127 Mo. 372. (2) The quitclaim deeds from Bliss to Welch and from Welch to Elliott conveyed nothing. We make no criticism of the modern doctrine of this court that the words "remise, release and forever quitclaim" are

operative words of conveyance. This doctrine in all the cases in which it has as yet been applied is consistent not only with reason and justice, but also with the intention of the parties to the deed. Wilson v. Albert, 89 Mo. 537; Bray v. Conrad, 101 Mo. 331; McAnaw v. Tiffen, 143 Mo. 667. But we know of no case where it has been held that a grantee who expressly stipulates for a deed of release, or quitclaim, and who declares he does not ask and does not want his grantor to warrant anything, can acquire by legal construction any more than he bargained for in his contract. Bliss did not claim to have the legal title when he quitclaimed to Welch; did not know the lands were the same he had previously conveyed to Gendron; and did not intend to convey the lands he had previously conveyed to him.

O. F. SMITH and A. W. MULLINS for respondent.

(1) The evidence offered on the trial conclusively shows that as to a part of the land in controversy it was purchased of Chariton county by Courtney, who paid twenty per cent of the purchase price thereon and received a certificate of purchase for said land and subsequently sold his interest therein and assigned his certificate of purchase to Kennedy, who paid to said county the balance of the purchase money in full, and that as to the remainder of said land the said Kennedy purchased it of said county and paid the purchase price in full and received a certificate of purchase therefor. And such being the evidence the deeds from Lee, as commissioner for the county under his appointment, to Kennedy, conveyed to and vested in said Kennedy all the right, title and interest of said Chariton county in and to said lands. R. S. 1879, secs. 671 and 6205; R. S. 1889, secs. 2398 and 6515; Hall v. Gregg, 138 Mo. 286; Prior v. Scott, 87 Mo. 303; Henry v. Atkison, 50 Mo. 266. (2) Welch, from whom plaintiff acquired title, purchased the land in good faith and paid therefor a valuable consideration—all the land was worth

as estimated by the defendant.    And neither Welch, when he purchased the land, paid for it and received his deeds from Malcolm Bliss, nor the plaintiff, when he purchased the land in controversy, had any notice or knowledge whatever that said Bliss had, prior thereto, conveyed to Gendron.    Therefore, although the deeds from Bliss to Welch are quitclaim deeds, in the usual form of such deeds, having been executed for a valuable consideration in cash paid, the title to the land passed by them to said Welch, as against the unrecorded deed from said Bliss to Gendron.    Fox v. Hall, 74 Mo. 315; Munson v. Ensor, 94 Mo. 504; Willingham v. Hardin, 75 Mo. 429; Boogher v. Neece, 75 Mo. 383; Ebersole v. Rankin, 102 Mo. 488; Hickman v. Green, 123 Mo. 178; Drey v. Doyle, 99 Mo. 459; Hope v. Blair, 105 Mo. 95.    (3)    The record discloses that defendant's claim of title comes from the same source as the plaintiff's title, and defendant is not in a position to question the validity of the title held by Malcolm Bliss.  Smith v. Lindsey, 89 Mo. 76; Miller v. Hardin, 64 Mo. 545; Brown v. Brown, 45 Mo. 412; Holland v. Adair, 55 Mo. 40; Charles v. Patch, 87 Mo. 463; Ebersole v. Rankin, 102 Mo. 488; Grandy v. Casey, 93 Mo. 595.

GANTT, P. J.—Action of ejectment in ordinary statutory form in the circuit court of Chariton county.    Petition filed February 19, 1894, to recover possession of all that part of the southeast quarter of the northwest quarter of section twenty-seven and the southwest quarter of section twenty-seven and the east half of the southeast quarter of section twenty-eight, and the southwest quarter of the southeast quarter of section twenty-eight, and the north half of the northeast quarter of section thirty-three, and the southwest quarter of the northwest quarter of section thirty-four, all in township fifty-five, of range seventeen, lying and being on the north and west side of the Chariton river, in Chariton county.

Defendant in his answer admitted possession, but denied all other allegations in the petition.

Plaintiff deduced title as follows:

First. The patent from the State of Missouri to Chariton county, dated November 12, 1869, granting to said county all the lands in controversy in this case and all other swamp and overflowed lands in said Chariton county.

Second. An order of the county court of said Chariton county, made on May 8, 1883, appointing John A. Lee, clerk of said county court, deed commissioner to convey by proper deed swamp and overflowed lands, sold under the orders of said court, to the purchasers thereof.

Third. Two deeds executed by John A. Lee, deed commissioner for and on behalf of said Chariton county, each to A. G. Kennedy, and dated, acknowledged and recorded on the 29th day of November, 1896, conveying to said Kennedy all the lands in controversy in this case.

Fourth. Two patents from Chariton county to A. G. Kennedy, dated the 9th day of February, 1894, for all the lands in question in this case, and reciting in said patents that said Kennedy made full payment for said lands on the 27th day of November, 1886.

Fifth. The record of a deed of general warranty from A. G. Kennedy and his wife to Malcolm Bliss, dated November 27, 1886, and recorded in the recorder's office of Chariton county, on December 3, 1886, which deed conveyed all the lands in question in this case.

Sixth. Two deeds of quitclaim from Malcolm Bliss and wife to Alonzo L. Welch, dated, respectively, on the 8th and 16th of December, 1893, and duly recorded in the recorder's office of Chariton county, December 12th and 22nd, 1893, conveying all the lands in controversy in this case.

Seventh. Two quitclaim deeds from Alonzo L. Welch and wife to George N. Elliott (the plaintiff), dated respectively on December 12th and 22nd, 1893, and acknowledged and

recorded on the day of their dates, respectively; which deeds convey all the lands in question in this case.

The plaintiff on the trial also introduced proof that John A. Lee was the clerk of the county court of said Chariton county from January 1, 1883, to January 1, 1891.

The plaintiff also offered and read in evidence a special act of the legislature, entitled "An act to prescribe the manner of conveying swamp lands in Chariton county." Approved March 16, 1861. [Sess. Acts of 1860, 1861, p. 394.]

George N. Elliott testified that the defendant had about 300 acres of the land inclosed and used it for pasturage.

For the defendant, A. G. Kennedy testified that he purchased of Chariton county the lands that he conveyed to Malcolm Bliss. That when he, Kennedy, purchased the lands he received certificates of purchase; and that he paid for the lands in full, and presented the treasurer's receipts, showing such payments, to John A. Lee, who executed to him, Kennedy, the deeds in evidence. That after he bought and paid for the lands he sold and conveyed them by warranty deed to Malcolm Bliss.

For the purpose of showing title to the land in question the defendant offered in evidence a deed from Malcolm Bliss and wife to "one Gendron," dated October 5th, 1887, and filed for record 21st of March, 1894, but on objections being made to the deed by plaintiff, the defendant withdrew it for the time being, and offered and read in evidence the deposition of L. E. Gendron, taken on the 29th of March, 1894. This witness testified that in 1887 he traded three lots in the city of Independence to Malcolm Bliss "and he sold me some land in Chariton county, Mo. That land was the only land in Chariton county that Bliss ever made a deed to. At the time of my trade with Bliss I and my brother owned the lots in Independence. My brother's name is Julius Gendron. . . . Bliss was to pay $11,600 for the lots and gave me the land in Chariton county to the amount of $9,600, and made up the

rest by giving me three notes secured on the lots I traded him. . . . I saw the deed to the Chariton county lands several weeks, three or four weeks, before it was delivered to me. . . . When I first saw the deed it was made to L. E. Gendron; that is to myself. . . . When he showed me the deed to L. E. Gendron I asked him to make it to J. E. instead of L. E. . . . When he delivered it to me the deed had been changed to J. E. Gendron. The "L." in the deed had been changed to "J." before it was delivered to me. The "J." in the deed stands for Julius. That is my brother. Julius and I in company own the land. . . . This deed in question is the only deed Bliss ever made me or my brother for this land. The change was made from L. E. Gendron to J. E. Gendron before the deed was delivered to me—while it was in Mr. Bliss' possession before delivery. That deed was not recorded until just a few days ago, last Tuesday, I think, or Wednesday morning, at Chariton county, Missouri."

The defendant's counsel then again offered in evidence the deed from Malcolm Bliss and wife to J. E. Gendron, dated October 5, 1887, and recorded March 21, 1894, and against the plaintiff's objections, the court admitted said deed in evidence.

Malcolm Bliss, in his deposition taken March 20, 1894, and read in evidence by defendant, testified: That he formerly owned two or three thousand acres of swamp land in Chariton county, which he obtained from Kennedy. That a good many years ago he made a trade with L. E. Gendron and gave him some wild lands in Chariton or Wayne county, or both, and took in exchange some building lots in Independence. The consideration for the land was the lots in Independence. "I suppose I have some interest there yet, how much I don't know, haven't looked it up." That in December, 1893, he made two quitclaim deeds to some Chariton county land, but don't know the grantee's name. That he looked over the deeds to see the number of acres included, and that was all. That he had no correspondence with Alonzo L. Welch about

the matter, but that the correspondence was with George N. Elliott who sent him, Bliss, the deed to execute. "Forty cents an acre was the consideration I received."

The defendant by his counsel on October 16, 1895, took the deposition of the plaintiff, George N. Elliott, and on the trial the defendant read the same in evidence, "as an admission."

In that deposition the plaintiff testified that at his instance the county court issued the two patents in evidence to Kennedy, that he, plaintiff, then owned the lands, and Kennedy had no interest in them. That his, plaintiff's, title was based on the title he acquired through a deed from Kennedy to Bliss and from Bliss to Welch and from Welch to plaintiff.

"Q. Did you ever know anybody to be in actual possession of the lands in controversy other than Mr. Buffington, the defendant?

"A. No; I never knew of anybody being in possession of it at all.

"Q. Who was in possession of it when you bought from Mr. Welch?

"A. I didn't know that anybody had possession of it. I just supposed it was like all or a large part of those bottom lands, just laying out; and did not know that it was inclosed at all until we went up there.

"Q. When did you first learn that Mr. Gendron claimed to be the grantee of these lands?

"A. I think it was some time in March, 1894.

"Q. Previous to that time and before you applied to the county court for a patent, hadn't you been informed that Bliss had conveyed his interest in these lands before he conveyed to Welch?

"A. No, sir; I had not."

And in his said deposition the plaintiff further testified that he was acting for Mr. Welch when he wrote the letters in evidence to Mr. Bliss. Mr. Welch said to plaintiff that if

he could find Mr. Bliss and buy the lands he, Welch, would pay plaintiff well for his trouble. The actual consideration paid to Bliss is expressed in the deeds, the amount being $227.

Alonzo L. Welch, called by defendant, testified: "I employed George N. Elliott to purchase the lands in question from Mr. Bliss. I knew the N. W. 5-54-17, but had no knowledge of the land in suit here before my purchase from Bliss, only what the record showed. . . . The land I employed Mr. George N. Elliott to buy for me from Bliss, the piece the first conversation occurred over, was the northwest 5-54-17. . . . That is the piece I got and now own. The second conversation was after he received a letter through the mail. He came into my office and said, 'I have got an answer from Mr. Bliss stating that if you will take all the land, that you can have it at forty cents an acre.' . . . I told him to look up and see how much Mr. Bliss owned, how much I would have to pay for it, and I forget the number of acres, but I think it came to $185. I told him I'd agree to take it, told him to make the deed and send it on for signature, and I would have the money ready. After the deed came I paid him the money for the deed, and put the deed on record, and in a day or two he came back and said he made a mistake of 80 acres of land; that is, he made the trade for me to buy all the land, he would like for me to pay for the other land. I asked him how much it was and he said 80 acres. . . . They sent on and got the deed and I paid the money, $32. The record title to the land I wanted was in Bliss. I had written a letter to Kansas City asking Mr. Bliss what he would take for the land. I think the letter was returned to me. I asked Mr. Elliott if he could locate Mr. Bliss and he said he thought he could. I told him I would pay him well if he got me a quitclaim deed from Mr. Bliss for the northwest quarter 5-54-17. . . . After the land had been deeded to me I proposed to Mr. Elliott to deed him the land in 55-17, in consideration of his services in getting me the deed to the northwest of 5-54-17, and the use of

his abstracts as long as I stayed here.    He accepted my offer and I made him the deed.    .   .   .    Don't think the land worth much.    Had a conversation with Mr. Buffington about a year before, and he said it was worth about 40 cents an acre.    .  .  .    I knew nothing about Bliss having conveyed this land before, and bought the land in good faith. . . . The taxes on this land in controversy have not been paid for four or five years."

The defendant then offered in evidence a sheriff's deed, executed by the sheriff of Chariton county, dated July 13, 1894, purporting to convey the interest of L. E. Gendron in and to the lands in question to the defendant, Buffington. This deed, against plaintiff's objections, was admitted in evidence.    This deed recited that two judgments were rendered in the court of G. F. Purcell, a justice of the peace within and for Blue Township, Jackson county, Missouri, on September, 18, 1888, in favor of A. H. Spellman and against L. E. Gendron, each for $278.83, and transcripts thereof were filed in the office of the clerk of the circuit court of said Jackson county, on October 3, 1888, and that alias executions issued thereon, April 25, 1894, directed to the sheriff of Chariton county, who levied on the lands in controversy, on May 8, 1894, as the property of said L. E. Gendron, and advertised and sold the same on the 13th of July, 1894, and Benjamin R. Buffington became the purchaser thereof, and to whom the sheriff executed the deed on said 13th day of July, 1894.

The defendant offered no evidence of any other claim of title to the land.

For the plaintiff the court declared the law, as follows:

"1.    The plaintiff has produced and shown in evidence a complete and connected chain of legal title to the lands in question from the United States down to the plaintiff, and the finding and judgment should be for him, unless his right to recover be defeated by the deed from Malcolm Bliss and wife to L. E. or J. E. Gendron, offered in evidence by defendant.

"2.    The court further declares the law to be that if it appears from the evidence that Alonzo L. Welch purchased the lands in question from Malcolm Bliss, in whom the record title thereto then stood, and paid him a valuable consideration therefor, then the deed, in evidence, from said Malcolm Bliss and wife to said Alonzo L. Welch, dated December 8, 1893, and recorded December 12, 1893, and the deed from said Bliss and wife to said Welch, in evidence, dated December 16, 1893, and recorded December 22, 1893, are sufficient to and did convey to said Welch the title to the said lands, notwithstanding said Malcolm Bliss and wife had theretofore, on October 8, 1887, executed to one Gendron the deed produced in evidence by the defendant, but which deed was not filed for record until subsequent to the recording of said deeds from said Bliss and wife to said Welch, to wit, on March 21, 1894."

And for the defendant the court declared the law as follows:    "It is alleged in the petition and admitted by the answer that the defendant, Benjamin Buffington, was in possession of all the lands in controversy at the date of the commencement of this action, and there is no evidence that the plaintiff was ever in the actual possession of any of the lands in controversy.    The court therefore declares the law to be that the mere possession of the defendant, Buffington, is sufficient to defeat the plaintiff's recovery, unless the court from the evidence in the case shall find that the plaintiff, George N. Elliott, was the owner of said land at the date of the commencement of this action."

The court found for the plaintiff and the defendant appealed to this court.

I.    The principal contention of defendant is that the two deeds from John A. Lee, commissioner appointed by the county court, to Kennedy, were wholly ineffectual to convey the interest of Chariton county in these lands in suit.

In the view we take of the case it is entirely unnecessary to consider the local act of 1861, approved March, 1861, Laws

of Missouri, 1860-61, p. 394. The county court of Chariton county on the 8th day of May, 1883, appointed John A. Lee deed commissioner to convey by proper deeds swamp and overflowed lands sold under the orders of the said county court.

On the 29th day of November, 1886, said Lee, while still commissioner, made, executed, acknowledged and delivered to A. G. Kennedy the two deeds now contested by defendant. The insistence of counsel that there is not a scintilla of evidence showing that Kennedy bought or that the court sold him these lands is not supported by the record.

On the contrary it most conclusively appears from the evidence offered by defendant himself that a part of the land in controversy was purchased of Chariton county by Caswell Courtney, who paid 20 per cent of the purchase price thereon, and received a certificate of purchase for said land and subsequently sold his interest therein and assigned his certificate of purchase to A. G. Kennedy who paid to said county the balance of the purchase money in full, principal and interest, and that as to the remainder of said land the said Kennedy purchased it of said county and paid the purchase price in full and received a certificate of purchase therefor.

The distinction between a sale by the court and one by the county is not tenable. No swamp lands of the county could be sold without consent or the order of the county court. Hence when the evidence showed that Courtney and he had bought the county's title, it was tantamount to proof of a sale by the court. The order appointing Lee authorized the deed to Kennedy.

The further contention that when Lee was appointed commissioner and when he executed these conveyances, the general laws of this State governing the sale and conveyance of swamp lands restricted the sale to those made by the county court and prescribed that the conveyance could only be by patent by the president of the court and countersigned by the county clerk, is also untenable.

It has been so recently decided in Hall v. Gregg, 138 Mo. 286, that sections 6153, 6154, R. S. 1879, did not provide the exclusive method of conveying swamp lands but that the county courts could avail themselves of sections 6205 and 671, R. S. 1879, being sections 2398 and 6515, R. S. 1889, that we deem it unnecessary to again repeat the reasons which led to that construction.   There is no conflict between the different provisions and the county courts may resort to either method.

It follows that the commissioner's two deeds conveyed the lands in dispute to Kennedy—Kennedy and wife conveyed the lands to Malcolm Bliss by a proper deed duly recorded December 3rd, 1886.

Alonzo Welch having purchased the lands for a present valuable consideration from Bliss without any notice or knowledge that Bliss had previously conveyed the same lands to Gendron the title passed to him notwithstanding his deed was only a quitclaim deed.

It has been repeatedly decided by the court that a grantee for value, and without notice, in a quitclaim deed, acquires the same rights against an unrecorded deed of which he has no actual notice as any other innocent purchaser; that he is protected by our recording acts.   [Fox v. Hall, 74 Mo. 315; Munson v. Ensor, 94 Mo. 504; Ebersole v. Rankin, 102 Mo. 488; Hope v. Blair, 105 Mo. 85; Hickman v. Green, 123 Mo. loc. cit. 178.]

This view of the law renders unnecessary a discussion of what effect would have resulted from the delivery of the patents to plaintiff instead of Kennedy, the original purchaser, if plaintiff's title rested upon said patents.   As the commissioner's deeds were valid, the patents were useless.

Finally it appears that while plaintiff's petition only sought a recovery of that part of the lands described as "lying and being on the north and west side of the Chariton river," and the court's finding was "plaintiff is entitled to the possession of the land sued for and described in plaintiff's petition,"

the clerk by oversight entered the judgment for all of the lands mentioned by government numbers instead of "that part of said numbers lying north and west of the Chariton river."

This is such an evident mistake that the circuit court can correct it by a *nunc pro tunc* entry from the abundant records for that purpose, and does not require the reversal of the judgment. On the contrary, the judgment will be and is affirmed, with directions to the circuit court to correct the clerk's entry so as to conform to the petition and the court's finding.

SHERWOOD and BURGESS, JJ., concur.