Hall v. Callahan.

HALL, *Plaintiff in Error* v. CALLAHAN *et al.*

1. **Fraudulent Conveyance**, NOT IMPEACHABLE BY WHOM. A purchaser at administrator's sale cannot impeach a deed made by the administrator's intestate, on the ground that it was made with intent to defraud the creditors of the intestate.

2. **Husband and Wife**: ESTOPPEL. Acts of a husband in respect of the lands of his wife not held as her separate estate, cannot operate an estoppel upon her.

3. **Attorney and Client.** An attorney at law 'employed to attend to any and all cases that may arise affecting or designed to affect the title of his client to certain lands, is not thereby authorized to assist in procuring from the probate court an order that the lands be sold by the administrator of the former owner, as the prop-

erty of his intestate, even though this is done with a view of giving his client an opportunity to perfect his title by buying at such sale.

*Appeal from Jackson Circuit Court.*—HON. SAMUEL L. SAW-YER, Judge.

In July, 1868, one Samuel W. Nutter, being then largely indebted to several parties, for an expressed consideration of $17,000, conveyed all his property, personal and real, including a tract of six hundred acres of land, to his sister, Lizzie A. Nutter, who afterwards intermarried with James M. Callahan. The deed was recorded about the day of its date. Several of Nutter's creditors brought suit against him by attachment, claiming that this conveyance was without consideration and fraudulent.

In October, 1868, Nutter departed this life, and one Chapman was appointed his administrator. The attachment suits were revived and proceeded to final judgments in favor of the respective plaintiffs. Nutter had been executor of his father's estate, and his said sister was one of the sureties on his bond. Suit was brought on this bond by the administrator *de bonis non* of Nutter, the elder, and resulted in a judgment for $2,000 against Chapman, as administrator, and Mrs. Callahan as surety. This judgment was a lien on the real estate of the latter. Suits were also brought against Mrs. Callahan by the widow and child of Nutter, attacking his deed to her. There being no personal assets, Chapman obtained an order from the probate court for the sale of the real estate which had belonged to his intestate, for the purpose of paying his debts. Under this order he offered for sale, at public outcry, the lands which had been conveyed by the intestate, by the supposed fraudulent deed.

At this sale five forty acre tracts were sold, four of them to one Jordan, and the fifth to plaintiff Hall. The proceeds of the sales, amounting to over $6,000, were used by the administrator in paying off the above mentioned judgments. and the other debts of the intestate.

Immediately after the administrator's sale, Mrs. Callahan, by a quit-claim deed, conveyed to Jordan, who was a nephew of her husband, all the lands she had acquired from her brother, including in the conveyance the forty acre tract purchased by plaintiff. The present suit was brought against Mrs. Callahan and her husband, and Jordan, to have this conveyance set aside as fraudulent, and to have the title to said forty acre tract declared to be vested in plaintiff, the plaintiff claiming that he had purchased said tract by the inducement, persuasion and encouragement of Mrs. Callahan and her husband, aided and abetted by and with the connivance and assent of Jordan.

The petition charged that the conveyance from Nutter to Mrs. Callahan was voluntary, and that she believed it was void as against his creditors; that her object in having a portion of the lands sold was to get them paid off, so as to secure her title to the remainder against attack, and also to relieve her own lands from the lien of the $2,000 judgment in favor of the administrator of the elder Nutter.

At the trial evidence was given on the part of the plaintiff tending to show that Chapman, being advised that he could not, as administrator, impeach the conveyance to Mrs. Callahan, took no step to carry out the order of sale made by the probate court, until requested and advised so to do by Tilton Davis, an attorney-at-law, which request was made in the presence of and was acquiesced in by James M. Callahan; that said Davis had been employed by Mrs. Callahan to attend on her behalf to certain actions at law which were named in a written agreement, viz: the cases of *Megede v. Callahan; Sallie M. Nutter v. E. A. Nutter et al.; The State v. Warner; Wentworth v. Chapman et al.*, and *Sallie W. Nutter v. Callahan*, and also "to any and all cases that may hereafter arise affecting or designed to affect the title of said Eliza A. Nutter in and to the lands heretofore conveyed to her by her brother, S. W. Nutter, by deed dated in July, 1868;" that

Mrs. Callahan had actual notice of the administrator's sale before it took place, and Davis was present at it; that Jordan and Callahan were also present, and seemed to be acting together; that Jordan consulted with the Callahans about the sale beforehand; that the lands purchased in his name were paid for with Mrs. Callahan's money; that Jordan and Callahan both bid on the tract bought by the plaintiff, and ran it up to a high price; that plaintiff, in making his purchase, acted on the faith of the countenance given by Davis and James M. Callahan to the action of the administrator; that Callahan wrote the certificate of purchase given by the administrator to plaintiff; that before her marriage Mrs. Callahan had expressed to the administrator a willingness that some of the lands she had gotten from her brother should be sold to pay his debts; that Callahan had made the subsequent sale of the whole property to Jordan, with his wife's consent, and that he had made other contracts for her with her consent.

Testimony was given on part of the defendants tending to show that Mrs. Callahan did not know of the administrator's sale till after it had taken place, and never assented to it; that neither Davis nor her husband was authorized to represent her at the sale, and that they did not undertake to represent her; also, testimony tending to rebut the charge of a fraudulent combination between Jordan and the Callahans, and to show that plaintiff knew, when he made his purchase, that Mrs. Callahan was in possession, had a deed to the land, and claimed to own it. There was judgment for defendants, and plaintiff appealed.

*H. C. Wallace* for plaintiff in error.

1. Chapman, as administrator of Nutter, was fully authorized to sell. This case is totally different from *McLaughlin v. McLaughlin's, Admr.*, 16 Mo. 242; *Brown's, Admr. v. Finley*, 18 Mo. 375, and *George v. Williamson*, 26 Mo. 192. There had been no attachment in either of those cases, in

the life-time of the fraudulent grantor, as in this case. The judgments in the attachment suits in this case bound and were liens on the lands of the intestate. 1 Wag. Stat. 190, §§ 43, 45 ; Ib. pp. 94, 95, §§ 10 to 15 ; Ib. pp. 97, 98, §§ 28 to 35 ; *Lackey v. Seibert,* 23 Mo. 85, at page 92 ; *Ensworth v. King,* 50 Mo. 477 ; *Hardin v. Lee,* 51 Mo. 241 ; *Freeman v. Thompson,* 53 Mo. 183 ; *Porter v. Schofield,* 55 Mo. 57 ; *Johnson v. Gage,* 57 Mo. 165. The judgments being declared liens by a court of competent jurisdiction, it was the duty of the administrator to sell the lands without regard to the question as to what title would pass by the sale. *Magrew v. Foster,* 54 Mo. 258.

2. It was not necessary, in order that she be estopped thereby, that Mrs. Callahan should have been present, in person, at the sale ; and even if she did not have actual notice of the intention of the administrator to sell, or of the order of the probate court for such sale, or of the sale itself, and the objects and purposes thereof, (which, however, we submit, the evidence taken, altogether, shows that she did have) ; yet, knowledge and notice to her attorney, Tilton Davis, was in law, knowledge and notice to her, as she is bound by the acts of her attorney in regard to such sale. The employment of Davis, as her attorney, was not merely for his services and attention to certain causes mentioned in their written contract—some of which affected her title to the lands conveyed to her by her brother—but was general in regard to all cases that might arise affecting or designed to affect her title. The proceedings in the probate court of Lafayette county, by Chapman, to obtain an order of said court for the sale of said lands, as well as the sale itself, and the report and approval thereof by said court, was evidently within the meaning of said written contract, " a case," designed to affect the title of said Lizzie A. Callahan, in and to said lands, and hence, was a case which said Davis, as attorney, was engaged and employed to attend to for her. Sugden on Vendors, (1 Am. Ed.,) pp. 492, 493 ; Ib., (9 Ed.,) p. 262 ; 1 Story Eq. Jur.,

§ 408; 1 Greenlf. Ev., §§ 113, 416; Story on Agency, §§ 126, 129, 256; Angell & Ames on Corp., § 305; *Griffith v. Griffith*, Hoffman Ch'y. 153, at pp. 158-9, and notes; *Griffith v. Griffith*, 9 Paige 315; *Westervelt v. Haff*, 2 Sandford's Ch'y. 98, 107. A husband may be the 'agent of his wife. Story on Agency, §§ 6, 7; *Brady v. Bragg*, 1 Head (Tenn.) 511.

3. The gist and gravamen of plaintiff's suit, and cause of action, is the encouragement and acquiescense given by Lizzie A. Callahan and her husband, in person, and by the husband and agent, and the attorney of said Lizzie A. Callahan, to plaintiff to purchase the land (40 acres) in controversy, at the public sale thereof, by Chapman, the administrator, and the fraud practiced on plaintiff in such purchase, by defendants, in which fraud defendant Jordan, who held a quit-claim deed for said land, at the commencement of said suit, from said other defendants, largely and actively participated. See *Huntsucker v. Black*, 12 Mo. 333; *Taylor v. Zepp*, 14 Mo. 482.

4. That defendants, and each of them, on the general principles of the doctrine of equitable estoppel, would be precluded from claiming or asserting title to the land in controversy in this case, as against plaintiff, there can be no question. 1 Story's Eq., § 385; Ib., § 387; Ib., 376; *Wendell v. Van Rensselaer*, 1 John. Chy. 354; *Storrs v. Barker*, 6 John. Chy. 166; *Newman v. Hook*, 37 Mo. 207; *Lindell v. McLaughlin*, 30 Mo. 28: *Highley v. Barron*, 49 Mo. 103; 3 Wash. Real Property, (10 Ed.) pp. 76, 77, 78, 79, 80, 106, 107; *Rice v. Bunce*, 49 Mo. 231; *Tutt v. Boyer*, 51 Mo. 425; *Garnhart v. Finney*, 40 Mo. 449; *Barham v. Turbeville*, 1 Swan 437; *Beaupland v. McKeen*, 28 Penn. St. 124; *Shaw v. Beebe*, 35 Vt. 205; *Blackwood v. Jones*, 4 Jones Eq. 56; *Hayes v. Livingston*, 3 Cent. Law Journal 691; S. C., 34 Mich. 384; *Turner v. Baker*, 64 Mo. 218; *Mills v. Graves*, 38 Ill. 455; *Snodgrass v. Ricketts*, 13 Cal. 359; *Hatch v. Kimball*, 16 Me. 146; *Durham v. Alden*, 20 Me. 228; *Swick v. Sears*, 1 Hill 17; *Copeland v. Copeland*, 28 Me. 525; *McCune v. McMichael*, 29, Geo. 312; *Brown v.*

*Wheeler,* 17 Conn. 345 ;  *Valle v. Fleming,* 29 Mo. 152 ;  *Valle v. Bryan,* 19 Mo. 423 ;  *Wolf v. Robinson,* 20 Mo. 459.

5. So a party may be estopped by the acts and de-clarations of his agent, as well as by the acts of a party standing in some relation · of privity with him.   *Chouteau v. Goddin,* 39 Mo. 229.

Defendant, James M., was the husband of Lizzie A. Callahan, at the time of and before said administrator's sale, and the law, in the absence of any other legally con-stituted agent or trustee, regards the husband as the agent of the wife.   *Hamilton v. Bishop,* 8 Yerger 33.   This agency grows out of the very relation of man and wife.   Besides, the evidence of both Mrs. Callahan and her husband shows that he acted as her agent with her consent and knowledge, in managing her business.

*Walker & Field* for defendant in error.

I.   The probate court of Lafayette county had no jur-isdiction or authority over the lands of Samuel W. Nutter, deceased, that he, during his life, had conveyed to his sister, Lizzie A. Nutter ; that deed is valid till set aside by creditors in the manner provided by law.   *George v. Wil-lamson,* 26 Mo. 190; *Brown's Admr. v. Finley,* 18 Mo. 375 ; *McLaughlin v. McLaughlin,* 16 Mo. 242; *Perry v. Calvert,* 22 Mo. 361; *Johnson v. Jeffries,* 30 Mo. 423; *Reid v. Mullins,* 48 Mo. 344 ; Bump on Fraud. Convey., p. 444, note 2.   The right of executors and administrators to impeach a con-veyance, when the estate is insolvent, is expressly conferred by statute in the States of Massachusetts, Vermont, New Jersey, North Carolina, Wisconsin, Michigan, Ohio, Indi-ana, Louisiana, New York and Texas, and decisions from any of those States, quoted on this point, would not be authority in Missouri, for the reason that we have no such statute in this State.

II.   A wife cannot part with her legal estate, except by deed, in which her husband joins, duly acknowledged

in conformity with the statute. 1. Wag. Stat., §§ 2, 3, Ch. 35, Art. 1; 2 Wag. Stat. 935, § 14; *Huff v. Price*, 50 Mo. 228; *Wannall v. Kem*, 51 Mo. 151; *Clark v. Rynex*, 53 Mo. 380; *Chauvain v. Wagner*, 18 Mo. 532; *Reaume v. Chambers*, 22 Mo. 36; *Hempstead v. Easten*, 33 Mo. 142; *Shroyer v. Nickell*, 55 Mo. 264.

III. Lizzie A. Callahan is not estopped, by reason of her husband, James M. Callahan, having been present at the sale, and having bid on the land in controversy; .nor have any acts been proved that would operate as an estoppel to her. He was not the express or implied agent of his wife, and his acts could not prejudice her rights; nor were Davis or Chapman her agents, nor could she be estopped by their acts. A married woman cannot appoint an agent. Story on Agency, (4 Ed.,) p. 8; Dunlap's Paley on Agency, (4 Am. Ed.,) p. 1. If Davis and Chapman were her agents, that agency was revoked by her subsequent marriage with James M. Callahan. Dunlap's Paley on Agency, (4 Am. Ed.,) p. 189, note 7. James M. Callahan was not the agent of his wife. To establish the agency of the husband on behalf of the wife, the evidence must be cogent and strong, and more satisfactory than would be required between persons occupying different positions. *Eystra v. Capelle*, 61 Mo. 578. The doctrine of estoppel cannot be invoked in this case, for the reason that estoppel *in pais*, in regard to legal estate, has no application to marrid women. Bigelow on Estoppel, (Ed. 1872,) pp. 485-6, and cases there cited; *Glidden v. Strupler*, 52 Penn. St. 400; *Morrison v. Wilson*, 13 Cal. 494; *Rangely v. Spring*, 21 Me. 130; *Bank U. S. v. Lee*, 13 Peters 107; *Bemis v. Call*, 10 Allen 512.

HENRY, J.—That a conveyance in fraud of creditors cannot be impeached by the grantor, or his administrator, is well settled in the State by the cases of *McLaughlin v. McLaughlin*, 16 Mo. 242, *Brown's Admr. v. Finley*, 18 Mo. 375, and *George v. Williamson*, 26 Mo. 190. The probate court of Lafayette county therefore, had no jurisdiction

over the lands conveyed by said Nutter to his sister Lizzie A. Nutter, and the plaintiff acquired no title by his purchase of the land in controversy from the administrator: cases above cited.

Whether the doctrine of estoppel *in pais* applies to a married woman, as to land owned by her, but not as her separate property, it is wholly unnecessary to determine in this cause, because we do not think that the allegations in the petition of matters of estoppel were sustained by the evidence. There was no evidence except that of the relation between her and her husband, tending to show that she authorized or was informed of, the conduct of her husband in regard to the sale of the land. None whatever, that in person, she urged or sanctioned the sale by the administrator, while she testified positively that she did not know that the application for an order to sell the land had been made to the probate court, or that the application was granted, until after the sale had taken place, and that her husband was not her agent.

The land was not her separate estate, and this court held in *Wilcox et al. v. Todd*, 64 Mo. 390, that as to the other property owned by her she could have no agent.

Her husband testified that he did not inform her of the proceeding in the probate court, or of the order of sale. He also testified that he had no authority from her to procure a sale by the administrator, or to bid or procure bidders at the sale.

There is evidence tending to show that Tilton Davis, her attorney in other cases, advised Sam'l Callahan's administrator to procure an order for the sale of the lands, under the impression that a purchase by her at such sale would perfect her title, but he testified that he gave no such advice, nor expressed such an opinion. Whether he did or not, it would not have been binding upon Mrs. Callahan. It was not within the scope of his employment as her attorney. He was employed as an attorney at law to attend to certain cases therein specified, and generally to

attend " to any and all cases that may hereafter arise affecting, or designing to affect the title of said Lizzie A. Nutter in and to the lands heretofore conveyed to her by her brother, Sam'l W. Nutter." This certainly did not authorize him to procure the assertion of a hostile claim, and the sale of her lands under an order of the probate court. From the fact that he never consulted Mrs. Callahan in relation to, or advised her of, the proceeding in the probate court, or of the order made by that court, it is likely, as Davis states, that the witnesses misunderstood him. If for her benefit he advised that proceeding, it is very strange that he did not, as her attorney, inform her that the order had been made, and that she should prepare to purchase the land at the sale.

The court below committed no error in the trial of the cause, and with the concurrence of the other judges, its judgment is affirmed.

AFFIRMED.