Hickman v. Green.

---

HICKMAN *et al.*, *Appellants*, v. GREEN *et al.*

In Banc, June 18, 1894.

1. Witness, Competency of: WAIVER OF OBJECTIONS. Where no objection is made to a witness' competency though all the facts are known at the time, the testimony will not afterwards be excluded because relating to a transaction with a deceased person.

2. Agent: UNRECORDED DEED: NOTICE. Notice to an agent, employed to exchange land, of an unrecorded deed is not notice to his principal, when the agent is not employed to examine the title.

3. ——: ——: ——. While the knowledge of an agent is ordinarily to be imputed to the principal, yet, an exception to the rule exists where the agent is shown to be in collusion with a third person to defraud the principal.

4. Married Woman: LEGAL ESTATE: PRESUMPTION. It will be presumed, in the absence of evidence to the contrary, that a married woman is seized of a legal estate in fee and not of a separate estate. (*Henry v. Sneed*, 99 Mo. 107.)

5. ——: ——: AGENT. A married woman can not have an agent as to real estate which is not her separate estate. (*Wilcox v. Todd*, 64 Mo. 388.)

6. **Quitclaim Deed**: RECORDING ACT: NOTICE. A purchaser for value by a quitclaim deed is as much within the protection of the recording statutes as one who purchases by warranty deed, and he acquires title as against a prior unrecorded deed of which he did not have actual notice. (*Ebersole v. Rankin*, 102 Mo. 488)

7. **Unrecorded Deed**: NOTICE. Evidence in this case examined and *held* that the purchaser was not chargeable with notice of an unrecorded deed.

8. **Supreme Court Practice.** A judgment will not be reversed because a seemingly pertinent question has been excluded; what the offering party proposes to prove must also be shown, so that the appellate court can judge of its materiality and relevancy.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*John M. Barker* and *Geo. S. Grover* for appellants.

(1) The court erred in excluding evidence offered by plaintiff. The communications of Mrs. Green to Mr. Jesse were not privileged, because she was contemplating wrongdoing. R. S. 1889, secs. 3648, 3660, 3661; *State v. McChesney*, 16 Mo. App. 259, and cases cited; *Charlton v. Coombs*, 32 L. J. chap. 284, cited at page 103; 7 American and English Encyclopedia of Law. And the court ought to have excluded her evidence because the other party was dead. 87 Mo. 617; 102 Mo. 186; 90 Mo. 433. (2) The court erred in its conclusions of fact. The court found that Mrs. Green had no notice; but she certainly did, as Mr. Lakenan, a disinterested witness of high standing, told her all about the nature of the Hickman title. Notice to her attorney, Mr. Duncan, was notice to her. He admitted a small portion of the will was adduced before

him at the time.    Her agent, Mr. Nelson, also knew it.    *Linermore v. Blood*, 40 Mo. 48; *Bank v. Hoefer*, 88 Mo. 37.    (3) The court erred in giving the judgment to defendant, when it should have been for plaintiff. The burden of showing that the defendant was an innocent purchaser rested upon her, and she did not show it.  On the contrary, the facts and circumstances showed conclusively that she had notice, at least, of sufficient facts to put her on inquiry of Mr. Lakenan, if she had any wish to know. 14 Mo. 170; 47 Mo. 304, 306; 3 Wash. on Real Property [4 Ed.], 317; *Drey v. Doyle*, 99 Mo. 459.

*George Robertson* for respondents.

(1) The evidence of Mr. Jesse, the attorney to whom Mrs. Green carried the abstract of title to the lands was inadmissible.  Mrs. Green says that she went to Mr. Jesse to procure his services to examine the title for her.    Mr. Jesse says she came to him to consult him professionally.  Any communication that she made to him is privileged.  R. S. 1889, sec. 8924; *Cross v. Riggins*, 50 Mo. 335.    (2) The firm of Moore & Nelson were employed simply for the purpose of making the exchange.    They represented both parties in the trade, but had nothing to do with the examination of the title.    Mr. Duncan performed that duty for Mrs. Green.  Mrs. Green had no knowledge of the unrecorded deed from Lakenan to Mrs. Hickman and bodily heirs.    She was, therefore, an innocent purchaser and took good title as against the whole world.  R. S. 1889, sec. 2420.  The deed from Lakenan to Mrs. Hickman, under which Mrs. Green purchased, affects real estate and comes within the registry acts and conveys a good title to those unaffected with actual notice. *Munson v. Ensor*, 94 Mo. 504; *Ebersole v. Rankin*, 102

Mo. 488. (3) "If the authority of the agent is confined to obtaining the execution of the deed, the notice of the agent is not imputable to the principal. Devlin on Deeds, sec. 779; *Wyllie v.Pollen*, 32 L. J. (N. S.), 782. Notice to an agent to bind the principal must be within the scope of the agent's employment and notice to him for any fact outside the scope of his agency will not affect his principal. *Trentor v. Pothen*, 46 Minn. 298; *Roach v. Karr*, 18 Kan. 529; *Smith v. Board*, 38 Conn. 208; *Conger v. Railroad*, 24 Wis. 157. (4) Mrs. Lucy J. Green was a competent witness. *Coughen v. Haeussler*, 50 Mo. 126; *Orr v. Rode*, 101 Mo. 387. (5) These plaintiffs were all of age and knew of the fact that their mother was trading the lands in Mexico to Mrs. Green when it was done. One of the daughters, a plaintiff, went with her mother to the office of Moore & Nelson to assist in the trade. The trade was on from the fourteenth to the twenty-fourth day of April. They knew that Mrs. Green was about trading for the property, and, according to their own evidence, made no objections till after the deeds had been placed of record and until Mrs. Green had taken possession. According to the evidence of Mrs. Green it was much later before they made any objections. They misled Mrs. Green or deceived her by this conduct and they should not be heard now to complain. Having thereby committed iniquity they shall now have equity. Pomeroy's Eq. Juris., sec. 397, *et seq*.

GANTT, J.—This is a suit in equity to restore a destroyed deed from J. G. Lakenan and wife to Mrs. Frances D. Hickman for her life, remainder to the natural heirs of her body, conveying to them a parcel of land in the city of Mexico, Audrain county, Missouri, ninety feet front by two hundred and seventy feet deep, being the north part of, and taken off of, the

north side of lot number 35 of Mrs. Sparks' southern addition to the city of Mexico.

It was alleged in the amended petition, and sustained by the proofs, that in 1886, Lakenan and wife by warranty deed conveyed said land to Mrs. Hickman and her bodily heirs *and that said deed was never recorded.*

In May, 1889, Mrs. Hickman and her children were in the possession of this lot, occupying it as a residence. At the same time Mrs. Green, the defendant, was the owner in fee of a small farm of forty acres near Mexico, on which she was residing with her husband and codefendant herein. Mrs. Hickman was desirous of moving to the country and Mrs. Green preferred a residence in the city, and, thereupon, each of them employed the real estate firm of Moore & Nelson to effect the exchange of these two properties. Their contracts with Moore & Nelson were in writing. Mrs. Hickman's contract with them was executed May 14, 1889, and Mrs. Green's on May 16. In Mrs. Green's contract, the land was placed with Moore & Nelson *to exchange for Mrs. Hickman's lot.*

Mrs. Green asserted that she was the owner in fee of the forty acres and she agreed to take Mrs. Hickman's lot therefor, and give possession, November 1, 1889, the agency to continue for one month from its date. Moore & Nelson were "authorized to sell and contract under seal with purchaser for said premises *according to the price and term of payment above written, or any price or term which we may agree to accept other than the above.*" Their commission was fixed at $50 if the exchange was effected, whether by them or another. Mrs. Hickman's contract was in all respects, except dates, exactly like Mrs. Green's. She represented that *she was the owner in fee of her lot, and authorized the agents to exchange it for Mrs. Green's forty acres,* and

for the same commission and upon the same stipulation and give possession at "any time." Each owner valued her property at the time at $2,000, and there is no evidence that one was not as valuable as the other.

Mrs. Hickman caused an abstract of her title to the lot to be made, and, as by the abstract, the title would appear in Lakenan whose deed to her she had not recorded, and which, if recorded, would show she only had a life estate, she obtained from Lakenan and wife, another deed, a quitclaim deed, and special warranty, on May 23, 1889, conveying the title in the lot to herself without the words of limitation to her bodily heirs. Mrs. Green's title to the forty acres has not been disputed. Mrs. Hickman, through her agents, Messrs. Moore & Nelson, gave Mrs. Green the abstract to the lot, and Lakenan's quitclaim deed, and Mrs. Green submitted the abstract and deed to M. Y. Duncan, Esq., for his opinion *on the title as shown by the abstract and deed.* He advised her that Mrs. Hickman could make her a good title, and accordingly Mrs. Hickman made Mrs. Green a warranty deed to the lot in town, and Mrs. Green and husband made Mrs. Hickman a warranty deed to the forty acres, conveying a life estate to Mrs. Hickman, remainder in fee to her bodily heirs. Soon after the deeds were exchanged Mrs. Hickman with her children, the plaintiffs, moved out of her town house and took possession of the forty acres, and lived on it until she died, and Mrs. Green took possession of, and moved into, the house in town.

After the deeds were exchanged, Mrs. Hickman, her adult son Thomas Hickman, J. G. Lakenan and Nelson, of the firm of Moore & Nelson, met in the office of Moore & Nelson, in Mexico, and Nelson, in their presence, and at *Mrs. Hickman's request,*

*destroyed the unrecorded warranty deed from Lakenan and wife* to Mrs. Hickman and her bodily heirs.

The plaintiffs in this cause are D. C. Hickman, Mary L. Hickman and Mariah Hickman, adult children and heirs of Mrs. Frances Hickman, who died April 2, 1890, and prior to the institution of this suit. The defendants are Mrs. Green and her husband, Lakenan and wife, and J. T. Hickman and James L. Hickman, adult sons of Mrs. Hickman, who refuse to become plaintiffs, and Mrs. Josie Hickman, the widow of a deceased son, William T. Hickman, and his two minor children, William T. and Sadie Hickman. ·

At the request of plaintiffs, the circuit court made its finding of facts, upon certain points in the case, as follows:

"I find that the witness Nelson was the agent of both Mrs. Hickman and Mrs. Green at the time and before the transfer of the deeds were made between Mrs. Hickman and Mrs. Green; that he was agent *only* for the purpose of effecting *an exchange* of the lands between the parties, and was not authorized by Mrs. Green to judge of the goodness of the title she was getting from Mrs. Hickman, nor did he presume to act for her in that capacity; that Mrs. Green had in her employ an attorney, M. Y. Duncan, Esq., for the purpose of passing upon the title to the land she was getting; that Duncan, before the trade, did pass upon the title of Mrs. Hickman to the land traded Mrs. Green, and pronounced it good.

"I further find that Lakenan and Nelson destroyed the deed from Lakenan and wife to Mrs. Hickman (the deed that provided for a life estate in Mrs. Hickman, and remainder to her children); that this was done after the delivery of the quitclaim deed; that Nelson, before the consummation of the trade, knew, or had an opportunity of knowing, the contents of the destroyed

deed. I further find Mrs. Green, before the trade, knew that Mrs. Hickman, deceased, was living on, and had possession of, the 90x270 foot lot traded Mrs. Green, and also knew that Mrs. Hickman claimed to be the owner of it; and, further, that the destroyed deed was never on record; that Mrs. Green, upon inquiry as to the title of Mrs. Hickman to the lot mentioned, and delivered to her by Mrs. Hickman (was furnished), an abstract of the title to said lot taken from the records in the recorder's office of Audrain county together with the quitclaim deed from Lakenan and wife to Mrs. Hickman, which showed an absolute estate in Mrs. Hickman to the said lot, which abstract and quitclaim deed Mrs. Green caused to be examined by a competent attorney, Duncan, who pronounced the title good. These are the only facts the plaintiffs desire me to find in writing, and the conclusion of law I draw from the facts as above found, together with others, is, Mrs. Green, being without notice of the existence, contents or destruction of the first unrecorded deed from Lakenan and wife to Mrs. Hickman, and having exercised proper care and diligence in the examination of the title to said lot, is not affected by its fraudulent destruction, but takes a good title to said lot.''

To this finding plaintiff duly excepted. The circuit court thereupon found the issues for defendants, and rendered judgment accordingly. A motion for new trial was made and overruled, and plaintiffs have appealed to this court.

The errors assigned in this court are, briefly, that the circuit court erred in excluding the evidence of Frank R. Jesse, Esq., offered by plaintiffs, and in admitting the evidence of Mrs. Green herself, and in its finding of facts.

I. No objection was made as to the competency of Mrs. Green when she was sworn. She was exam-

ined in her own behalf by her counsel, and cross-examined by plaintiff's counsel at length, without a suggestion that she was incompetent to testify because of Mrs. Hickman's death.   After all the evidence was closed the plaintiffs moved the court to strike out, or disregard, all the evidence of Mrs. Green because the other party to the trade was dead, which motion the court overruled.

It is apparent at a glance that, if Mrs. Green was incompetent for the reason assigned, plaintiffs were as well aware of it before she testified as afterwards.   They can not, then, urge that they had no opportunity to interpose an objection.   Having permitted her to testify without objection, the subsequent motion to exclude came entirely too late.   Such a practice is not tolerated in our courts.   *Maxwell v. Railroad*, 85 Mo. 95; *State v. Hope*, 100 Mo. 347; 1 Rice on Evidence, secs. 258 and 259; *Quin v. Lloyd*, 41 N. Y. 349; *People v. Chacon*, 102 N. Y. 669; *Berry v. Hartzell*, 91 Mo. 132.

II.   The important question in this case is that of notice to Mrs. Green of the execution and delivery of the warranty deed from Lakenan and wife to Mrs. Hickman for life, remainder to her bodily heirs.   It is asserted by plaintiffs that she had direct actual notice, and if not, she is bound by the knowledge which Nelson confessedly had of the existence of that deed prior to the exchange of the deeds of Mrs. Green and Mrs. Hickman.   As to the direct evidence tending to show that Mrs. Green knew of the prior deed, Lakenan alone testifies.   His story is that some days, perhaps a week before the trade between Mrs. Hickman and Mrs. Green was consummated, Mr. and Mrs. Green passed him on the square in Mexico, and one of them, he don't remember which, asked him what kind of a deed he had made Mrs. Hickman.   He says, "I told them my best impression was I had deeded it to Dr. Hick-

man and wife and ·her bodily heirs." Mrs. Green, in her evidence, denied *that she ever met Lakenan, as he stated, or talked with him, and emphatically denies that she ever heard, or knew, of the prior deed when she tr*ded for the lot.* This made a clear and distinct issue for the trier of facts. The trial judge had these two witnesses before him. He observed their manner and bearing, and he chose to believe Mrs. Green in preference to Lakenan. Upon an issue so sharp and distinct, and evidence so contradictory, we defer to the finding of the circuit court.

But it is said that Mrs. Green is bound by the notice imparted to her agent, Nelson. By the terms of Mrs. Green's contract with Moore & Nelson, she simply employed them *to effect an exchange with Mrs. Hickman.* The agency was in no sense a general one. They were not employed to sell or convey the land to anyone but Mrs. Hickman, or *upon any terms except those specifically named in the instrument, or such as she might afterwards agree to.* She did not employ them to examine Mrs. Hickman's title. On the contrary, she consulted Mr. Duncan, her attorney, on the title. Nor is there any evidence in the record that Moore & Nelson prepared the abstract or passed on the title. The duty of furnishing the abstract devolved upon Mrs. Hickman. It does not appear, then, that it was within the scope of the agency of Moore & Nelson to pass upon Mrs. Hickman's title, or that they did so, and it is firmly settled that notice to the agent to bind the principal, *must be within the scope of the agent's employment. Bank v. Schaumburg,* 38 Mo. 228; *Hayward v. Ins. Co.,* 52 Mo. 181.

By the statute of frauds in this state, section 5186, "no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." This

contract, then, must be the measure of the authority conferred, and by its terms, it is limited to the *special matter of the exchange of Mrs. Green's forty acres for Mrs. Hickman's lot.* Whatever difficulty may arise in determining, in some cases, whether the agency is general or special, we think it obvious that this was a special agency, if Mrs. Green was competent to appoint an agent for any purpose. Mechem on Agency, secs. 284, 285. In fact, so far as Moore & Nelson were concerned, it was taken for granted that Mrs. Hickman had a good title in fee as she had represented to them when she employed them. The examination of her title was not a part of the duty imposed upon them by their contract with Mrs. Green, and any information they obtained outside of her contract with them, is not to be imputed to her.

But there are other considerations which forbid that their knowledge of this deed should be imputed to Mrs. Green. Moore & Nelson were also the agents of Mrs. Hickman. They had assumed a position antagonistic to Mrs. Green. They obtained their knowledge of this deed while serving the opposite party, and not in her employment, and it must be remembered that upon the consummation of this exchange they were to receive $100 commission; *otherwise, nothing.* If they concealed from Mrs. Green what they and Mrs. Hickman knew, the exchange would be made; if they disclosed the existence of that deed, and the infirmity of Mrs. Hickman's title, the presumption was that Mrs. Green, as an ordinarily sensible woman, would not transfer her property in which she had a perfect title in fee, for a mere life estate in property no more valuable. Their obligation to Mrs. Hickman might prevent their disclosing the weakness of her title, and the infirmity they had discovered in serving

her, *and themselves*, not Mrs. Green.  *Johnston v. Short-ridge*, 93 Mo. 227.

If this concealment was a fraud, it was committed in the interest of Mrs. Hickman, and *themselves*.   In the late case of *Bank v. Lovitt*, 114 Mo. 519, it was held that while it was a general rule that notice of a fact acquired by an agent while transacting the business of his principal, is notice to his principal, and this rule was alike applicable to corporations and individuals, and that the agent was presumed to communicate said fact to his principal, the reason of the rule ceased when the agent acquired such knowledge while acting for himself, and not his principal, and in such a case the rule ought not to apply.

In that case the court cited and approved the case of *Innerarity v. Bank*, 139 Mass. 332, in which it was said:   "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating."   See, also, to the same effect, *Frenkel v. Hudson*, 82 Ala. 158; *Kennedy v. Green*, 3 Myl. & K. 699; *Cave v. Cave*, 15 Ch. D. 639; *In re European Bank*, L. R. 5 Ch. App. Cas. 358; *Bank v. Harris*, 118 Mass. 147; *Dillaway v. Butler*, 135 Mass. 479; *Allen v. Railroad*, 150 Mass. 200.   When the agent is in collusion with a third person to defraud the principal, the latter will not be responsible for the knowledge of the agent in relation to such fraud.  *Ins. Co. v. Minch*, 53 N. Y. 144.

*The conduct of Nelson in destroying the deed with his hands by the direction of Mrs. Hickman,* in the absence of Mrs. Green brings this case peculiarly within the principle of these cases, and it would be unjust, and unreasonable to impute Nelson's notice to Mrs. Green by mere construction, under the facts of this case. · So that, laying out of view altogether the fact that Mrs. Green was, during all these transactions, a married woman, and incapable of appointing an agent in respect to property not her separate estate, we do not think she was bound by Nelson's knowledge of the existence of Lakenan's prior deed.

But it was held in *Henry v. Sneed,* 99 Mo. 407, in an opinion by SHERWOOD, J., that it would be assumed in the absence of evidence to the contrary that the wife was seized of a legal estate in fee, *and not of a separate estate,* and it was held in *Wilcox v. Todd,* 64 Mo. 390 and subsequently followed in *Hall v. Callahan,* 66 Mo. 316; *Hord v. Taubman,* 79 Mo. 101 and *Flesh v. Lindsay,* 115 Mo. 1, "that a married woman could not have an agent as to real estate which was not her separate estate." If incapable of having an agent, it would seem utterly illogical to bind her by notice to one who was not permitted by the law, as announced in these decisions, to bear that relation to her. *Cook v. Walling,* 117 Ind. 9.

Much stress is laid upon the fact that when Mrs. Hickman and Mrs. Green began to trade, the title of record was in Lakenan with Mrs. Hickman in possession. This is true, but there is absolutely no evidence that Mrs. Green knew anything whatever about this title of record. Conceding that Mrs. Hickman's possession was evidence of notice of her title, how does that effect Mrs. Green? When the negotiations advanced far enough, Mrs. Hickman asserted in writing *that she*

*was the owner in fee*, and furnished the abstract of title which showed a perfect title in Lakenan, *and, along with it, she furnished a quitclaim deed from him to herself with a special warranty.* If Mrs. Green had her suspicions aroused by the quitclaim deed, she *very sensibly and naturally submitted the abstract, and deed,* to her counsel, and desired to know if Mrs. Hickman could convey her a good title. As the title was perfect in Lakenan, he advised Mrs. Green that Lakenan's quitclaim conveyed to Mrs. Hickman a perfect title, and she could convey a good title according to the decisions of this court in *Fox v. Hall,* 74 Mo. 315, *Boogher v. Neese,* 75 Mo. 383, *Willingham v. Hardin,* 75 Mo. 429, *Munson v. Ensor,* 94 Mo. 504 and *Ebersole v. Rankin,* 102 Mo. 488; *Hope v. Blair,* 105 Mo. 90. He advised and required the Lakenan deed to be recorded and put on the abstract and that was done, and Mrs. Hickman *warranted* the title to Mrs. Green.

Her information, then, after examining in the usual and proper way, to wit, by requiring an abstract and seeking the advice of competent counsel, disclosed that *Mrs. Hickman was the owner in fee of the lot* and her possession was consistent with her paper title, and, having purchased it for value, she is as much within the protection of the statute for recording deeds as one who purchased from one having a warranty deed, and she acquired the title against the prior unrecorded deed of which she had no notice. *Ebersole v. Rankin,* 102 Mo. 488.

We attach no importance to the fact that Mrs. Green's deed to Mrs. Hickman conveyed a life estate to her with remainder to her bodily heirs, as it was, no doubt, drawn in this manner at Mrs. Hickman's suggestion, as she had a right to have it conveyed in any way she preferred.

When it is considered that one of these heirs, J. T.

Hickman, an adult son, stood by and saw the prior deed destroyed *without protest;* that all the grown children removed to the Green property, and that two of them have since mortgaged their shares in it, with full knowledge of all these facts, and that not one of them gave Mrs. Green notice until after the .deeds had passed and possession given, there is little to commend in this action, so far as the adults are concerned.

III. It remains only to notice the complaint that the circuit court refused to let Mr. Jesse, an attorney, answer two questions put to him by plaintiffs. He was first asked to state "what, if anything, Mrs. Green had ever said to him about the lost or destroyed deed," and without waiting for an answer, he was immediately asked, "if she didn't come to him and ask him to destroy the deed, and supply it with another deed?" Before these questions, or either of them, were answered, counsel for defendant, by permission, made inquiry, and developed that Mr. Jesse, at that time, was engaged with Mr. Duncan in defending a case in the circuit court for defendant, and afterwards in this court, reported as *Davis v. Green*, 102 Mo. 170, and that if she came to him at all *she came to him as her attorney*, and thereupon the court sustained the objection to the question as one of privilege. The question was not pressed. No offer was made to show that Mr. Jesse would, if permitted, testify to any material fact. It has been ruled again and again, that this court will not reverse a case merely because a seemingly pertinent question is excluded,' but the party must go further, and state what he proposes to prove, so that the court can judge of its materiality and relevancy, otherwise it is said the cause might be reversed and upon retrial the matter elicited by the question may be immaterial and incompetent. *Bank v. Aull*, 80 Mo. 199; *Jackson v. Hardin*, 83 Mo. 175; *State ex rel. v. Leland*, 82 Mo.

260; *Kraxberger v. Roiter*, 91 Mo. 404; *Berthold v. O'Harra*, 121 Mo. 88. The mere denial of this question is not sufficient grounds to reverse a cause otherwise well tried. The judgment is affirmed. BLACK, C. J., BARCLAY and MACFARLANE, JJ., concur; BRACE, BURGESS and SHERWOOD, JJ., dissent.

SHERWOOD, J. (*dissenting*.)—This is an equitable proceeding to obtain a decree restoring a destroyed deed which gave to the bodily heirs of Frances D. Hickman a remainder in fee in a certain lot in Mexico, after the expiration of their mother's life estate in said lot. The petition also asked for other and further relief.

In 1886, Lakenan and wife for a consideration of $2,000, conveyed to Frances D. Hickman for her life, with remainder to the natural heirs of her body, the lot in litigation, being a lot ninety feet by two hundred and seventy feet, to wit: The north part of lot 35, Sparks' addition to the city of Mexico. This deed, a general warranty deed, was never put to record, but was retained by Mrs. Hickman, the life tenant, who thereupon with her family took possesion of the premises. About three years thereafter, to wit, in 1889, Lucy J. Green and her husband became desirous of changing a forty acre tract in the county, owned by Mrs. Green, for the litigated lot on which Mrs. Hickman and her family then lived, so they engaged the services of Moore & Nelson, real estate agents in Mexico, to effect the exchange, and this was by the following contract:

"Contract between principal and agent for the sale of real estate. This writing made on the sixteenth day of May, A. D. 1889, witnesseth: That Lucy Green and J. R. Green, of the county of Audrain, in the state of Missouri, have this day placed with Moore & Nelson

the following described property of which they are the owners in fee, situate in township 50 of range 9, county of Audrain, and state of Missouri, to wit: All that certain farm or tract of land containing forty acres, N. E. S. W., sec. 12, Tp. 50, Range 9, for which the said Lucy J. Green and J. R. Green hereby agree to take in exchange lot number 35, Sparks' addition to Mexico, Missouri, belonging to Francis D. Hickman, price, $2,000. Terms of payment as above. Amount of mortgage of property ?——How soon after sale can give possession ?——November 1, 1889; the said Moore & Nelson shall have the agency of sale for the above property for one month from the date hereof; and we hereby authorize them to sell and contract under seal with purchaser for said premises according to the price and terms of payment above written, or any price or terms which we may agree to accept other than the above; and if the said property be sold or exchanged during the period above stated, no matter by whom, or after above period on information obtained through their agency, we agree to pay them a commission of $50 on gross amount on such sale or exchange.

"Lucy J. Green, [SEAL]
"J. R. (his X mark) Green, [SEAL]
"Signed in the presence of J. T. Nelson."

Two days later a similar contract was entered into between this firm and Mrs. Hickman. In order to effect this exchange, it became necessary to destroy the deed from Lakenan to Mrs. Hickman, and to substitute in lieu thereof a deed from Lakenan to Mrs. Hickman alone, which would convey merely a fee simple title. No such new deed was executed by the complainant Lakenan to Mrs. Hickman alone; but this deed was but a quitclaim deed, though it recited the same consideration as the former one. On the other hand, the deed executed by Mrs. Hickman to Mrs. Green, which

conveyed to her the lot in controversy, to her sole and separate use, was general warranty deed. But when Mrs. Green and her husband came to execute the deed for the forty-acre farm, they executed a general warranty deed to Mrs. Hickman for life with remainder to her bodily heirs, in similar form to her original deed from Lakenan. The parties then exchanged deeds and moved respectively to the farm and lot thus mutually exchanged, after which the original deed to Mrs. Hickman by Lakenan was destroyed by Nelson, the agent of both parties, in the presence of Mrs. Hickman, Thomas Hickman and Lakenan. Mrs. Hickman died before this proceeding was instituted.

The answer of Mrs. Green was a general denial; admitted the exchange of the different pieces of property as already stated, and that the deed of Mrs. Green to Mrs. Hickman and her heirs was as heretofore alleged, and denies what is not expressly admitted, etc. etc. Reply filed.

In addition to Mrs. Green and her husband there are other defendants, either the children or the grandchildren of Mrs. Hickman, for whom a guardian *ad litem* was appointed. ·Lakenan was also made a defendant. The court below found for Mrs. Green and that she was a purchaser without notice, and plaintiffs appeal. Other facts than heretofore recited will appear in the following opinion.

The dominant issue in this cause is the question of notice to Mrs. Green. After discussing this question, others of less importance, but yet bearing on the main issue, will be passed upon.

1. No reason is perceived why in this case the general rule should not prevail, that notice to the agent is notice to the principal. *Meier v. Blume*, 80 Mo. 184; *Hayward v. Ins. Co.*, 52 Mo. 181; *Chouteau v. Allen*, 70

Mo. 290; Story on Agency, sec. 140; Wade on Notice, secs. 31, 32, 33; Kerr on Fr. & Mist., p. 258.

In this case the agency of Moore & Nelson was a general one; by the written authority and contracts entered into by and between them and Mrs. Green and Mrs. Hickman respectively they were empowered to make the exchange of properties, "to sell and contract under seal with the purchaser for said premises according to the price and terms of payment above written, or any price or terms which we may agree to accept other than the above." If such language did not make Moore & Nelson general agents, it is hard to say what words would be sufficient.

Notwithstanding Nelson's evasive manner of answering the question as to whether the original deed from Lakenan to Mrs. Hickman and her heirs was *"in his hands"* before its destruction, he was forced to admit that he know of its existence before that time, and knew that it was not destroyed till after the other deeds were delivered. And he further states that "Mrs. Hickman requested it," *i. e.*, the destruction of the deed. This single circumstance was amply sufficient to fix Mrs. Green with notice of the unrecorded deed, and to inform her of it as fully as her agent was informed.

And it does not matter that it does not appear of what kind of estate Mrs. Green was seized in the forty-acre farm. Grant that she was seized simply in fee, and, therefore, under our rulings, could not bind her by a contract in writing with a third person ( *Wilcox v. Todd*, 64 Mo. 390; *Hall v. Callahan*, 66 Mo. 316; *Hord v. Taubman*, 79 Mo. 101; *Henry v. Sneed*, 99 Mo. 407) still it does not thence follow that notice to Nelson would not be notice to her. Under a recent ruling of this court (*Flesh v. Lindsay*, 115 Mo. 1), a married woman is not to be regarded as a very impersonal

person after all.    Mrs. Green had eyes to see and ears to· hear, and doubtless Nelson communicated to her· what he knew regarding the prior deed and he will be presumed to have done so.

In the case cited, Burgess, J., applied to a married woman in the use of her property the maxim " *sic utere tuo*," etc., and I can· discover no reason why another maxim equally familiar is not applicable here. In a word, Mrs. Green can not be permitted to flaunt her disability in the face of a court of equity; assert she had no notice because she could have no agent, and still at the same time claim and hold under the questionable service of the very person whom she employed in that fiduciary capacity.    Such conduct will not be tolerated by a court of conscience. *Qui sentit commodum sentire debet et onus.*   Broom's Leg. Max. [8 Ed.], 706; 2 Burr. L. Dict., 369;   Story on Ag. [9 Ed.], sec. 389; 1 Story's Eq. Jur. [13 Ed.], sec. 469.

2.    But there are other facts and principles of law which tend to the same conclusion:    Thus, when Mrs. Green began her negotiations with Mrs. Hickman, the record of deeds of the county showed that Lakenan was the owner of the legal title to the lot; this gave Mrs. Green· constructive notice that he was the real owner. 3 Washburn on Real Prop. [5 Ed.], 335, and cases cited.    And this, too, when Mrs. Hickman was then in the actual, notorious, open, exclusive, unequivocal and visible possession of the lot, and had been thus in possession for some three years previously; and this was known to Mrs. Green who resided on her forty-acre farm, some three miles from there.    Under the authorities in this state, such a possession is evidence of actual notice sufficient in ordinary circumstances to satisfy a jury that a party purchased with knowledge of a prior deed.    Actual notice under our registry acts is not certain knowledge, but such information as men

generally act upon in the transactions of life. *Vaughn v. Tracy,* 22 Mo. 415; s. c., 25 Mo. 318.

In *Speck v. Riggin,* 40 Mo. 405, the court holds that "notice   *   *   * is actual when the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowing, although he may not use them." See, also, *Maupin v. Emmons,* 47 Mo. 304; *Martin v. Jones,* 72 Mo. 23; 3 Washburn on Real Prop., 336; Tiedeman on Real Property [Enlarged Ed.], sec. 819.

A recent author says upon this subject that "if facts are brought to the knowledge of a party, which would put him, as a man of common sagacity, upon inquiry, he is bound to inquire; and if he fail to do so, or to do so properly, whether fraudulently or only negligently, he will be chargeable with notice of what he might have learned upon reasonable examination." Bigelow on Fraud, p. 386.

In another work of merit touching the point in hand, it is said: "The reason of the rule is this, that it is the duty of a person who proposes to deal respecting the title to a particular tract of land, to ascertain in advance who is in possession of it, and by what rights he claims to hold it; and if he neglects this duty, it is only just that he should be charged with the knowledge that he would have obtained had he performed it." 2 White & Tudor's Leading Cases in Equity, p. 180. See, also, *Leavitt v. LaForce,* 71 Mo. 353, and cases cited.

Besides all that, the very written contract or memorandum, call it what you will, which Mrs. Green signed and gave to Moore & Nelson for the exchange of the properties, recognized and admitted that the title to the lot was in Mrs. Hickman, though the county record showed the legal title to be in Lakenan. This of itself charged her with notice, and compelled

her to institute the most diligent inquiry as to the true nature, scope and extent of Mrs. Hickman's title.

3.   But this is not all; Lakenan says that some days, perhaps a week, before the quitclaim deed was executed by him to Mrs. Hickman, he met Mrs. Green and her husband, and one of them asked him what kind of a deed he had made to Mrs. Hickman, whereupon he told them he had deeded the lot to Mrs. Hickman and her bodily heirs.    It is true that Mrs. Green denied this conversation with herself, but does not deny but what it occurred with her husband; and then it must be borne in mind  that Mrs. Green is an interested witness, while Lakenan is wholly disinterested.

Nor should it be forgotten in what a singular manner this whole business was transacted.    Not satisfied with employing real estate agents, whose usual occupation was to prepare abstracts of titles, Mrs. Green employed Duncan, not to examine the *title*, and to pronounce upon its validity, as is usual for a lawyer to do in such cases; but the only question asked him, as he testifies, "was *whether Lakenan's deed in that form would pass the title?*" and he told them it would. It certainly seems odd that a quitclaim deed only should be required of Lakenan, who appears to be a man of means, while a conveyance with full covenants of warranty is exacted from Mrs. Hickman for the same property, she being described in that deed as a "widow lady" and not possessed, it would seem, of any other property to make her warranty good.

And then, look at another point; though Mrs. Hickman had been living on that lot for some *three* years, exercising all the valuable and outward *indicia* of absolute ownership, yet this quitclaim deed to her in 1889, recited a consideration of $2,000, as if the property had just been bought.  Furthermore, it would seem, that before possession was obtained by Mrs.

Green, she was informed by one of these plaintiffs that Mrs. Hickman only had a life interest in the property. Moreover, the deed executed by Mrs. Green was drawn, in all respects, like the destroyed deed; that it conveyed the forty-acre farm to Mrs. Hickman and "her bodily heirs." Taking all these circumstances into consideration, it is difficult to see how the lower court could find Mrs. Green was a purchaser without notice.

4. Mrs. Green was not a competent witness, because the other contracting party was dead, and, therefore, she could not testify in her own favor. R. S. 1889, sec. 8918; *Chapman v. Dougherty*, 87 Mo. 617; *Meier v. Thieman*, 90 Mo. 433; *Emmel v. Hayes*, 102 Mo. 186. But these remarks are not to be understood as denying to her the right to combat by her testimony what others had testified she had done and said in their presence.

5. But the motion to exclude her testimony came too late. The general rule is, that where a party fails to object to incompetent evidence, and it has been received absolutely and unconditionally, and not upon an unperformed promise to show its relevancy, it can not afterwards be stricken out. 1 Rice on Evidence, 258, 259, and cases cited. *State v. Hope*, 100 Mo. 347.

6. The relation of attorney and client is not established until a proposal is made by the would-be client to engage the services of the attorney and his acceptance of the employment; but this proposal and its acceptance may arise either from express contract or from clear implication. But, until these two things occur, the relation of attorney and client does not exist, and, of consequence, communications made to the attorney in such circumstances are not privileged. Weeks on Attorneys, secs. 185, 183. Under this view, if Mrs. Green went to Mr. Jesse, and without engaging

his services as an attorney, asked him to destroy the original deed from Lakenan to Mrs. Hickman and her children, and to supply its place by writing another, such a communication would not be privileged.

7. But it would not be privileged, for a far weightier reason: The privilege does not extend to, nor shelter advice concerning, nor assistance in, proposed infractions of the law. 1 Wharton's Evidence [3 Ed.], sec. 590 and cases cited; 7 Am. & Eng. Encyclopedia of Law, p. 103 and cases cited. If, therefore, Mr. Jesse was thus approached by Mrs. Green, any communication of the sort not being privileged, he would be compelled to testify in regard to it.

8. If the plaintiffs who are adults, after being made fully aware of their rights in the premises, have ratified the transaction already mentioned by dealing with the property for which the exchange was made, as their own, of course they would be estopped to proceed further; but in order to estop them, the evidence should be clear of their being fully aware of their rights. It is scarcely necessary to add that the doctrine of estoppel would not apply to the infant minors. And they not having taken any part in the transaction, are not required to make any conveyance of their interest in the forty-acre farm; indeed, being minors it is out of their power to do so—and under the ruling in *Craig v. Van Bebber*, 100 Mo. *loc. cit.* 589, even if the forty acres had been sold and the proceeds squandered, they could repudiate the affair without tendering back the purchase price.

All these matters, however, can be appropriately settled, when this cause is returned to the lower court, and full and complete justice done between the parties litigant, and of course, a decree can be made divesting the title in the forty acres, out of the infants, and out of the adults, where the latter are not estopped.

9.   As to the improvements made by Mrs. Green on the lot in Mexico, if she made them after engaging in the questionable transaction charged in the petition she could not hope to have such improvements considered in the adjustment of the equities of this cause.

The judgment will be reversed and cause remanded with directions to proceed in conformity with this opinion.   BURGESS, J., concurs in all that has been said.   GANTT, P. J., dissents *in toto.*

The foregoing opinion was filed in division number two, and met with the full concurrence of Judge BURGESS, and is reported in 22 S. W. Rep. 455, but was transferred to court *in banc* because of the dissent of GANTT, J.

Owing to the importance of the principles involved in the case, I have deemed it not improper to add to what I have already said, a few additional observations.

1.   I understand the rule of law to be that where one purchases an equitable interest in land, with notice of the fact that the legal title is outstanding in one other than his purchasee, that alone suffices to put the purchaser on inquiry and charge him with notice of all that to which such inquiry, if properly pressed, would lead.

Wade says:   " Where one purchases, with notice of the fact that the legal title to the property is in some one else than his grantor, he is thereby put upon inquiry as to the nature and extent of his grantor's title, and if such inquiries would lead to knowledge of circumstances affecting the title, he will be bound as by actual notice of such facts."   Wade on Notice [2 Ed.], sec. 18.

In this case that was just the situation, for the legal title was outstanding in Lakenan, though Mrs.

Green in the paper signed by her admitted Mrs. Hickman to be the owner of the town property. On this point, the learned spokesman of the majority gives utterance to these remarks: " Much stress is laid upon the fact that when Mrs. Hickman and Mrs. Green began to trade, the title of record was in Lakenan with Mrs. Hickman in possession. This is true, but there is absolutely. no evidence that Mrs. Green knew anything whatever about this title of record."

Before these words were given forth which fix the limits and set the bounds to our. registry acts, I had supposed, as stated by all the authorities I had previously examined, that a deed placed on record was "constructive notice to all the world," and that in this respect there was "no difference in legal effect between actual and constructive notice." 3 Washburn on Real Property [5 Ed.], 335.

Wade says: " Where an instrument by which the title to real estate is affected is properly recorded, the record thereof is constructive notice to subsequent purchasers or incumbrancers under the same grantor. * * * Any instrument affecting the title, which is properly recorded, is absolute notice to every one subsequently dealing with the title, irrespective of whether such person has examined the records, or even had an opportunity to make an examination." Wade on Notice [2 Ed.], sec. 97. And the same author states this "presumption of knowledge is *conclusive.*" *Ibid.*

And before the authoritative ruling aforesaid, I had *also* supposed that a married woman was not exempt from the operation of our registry acts, and that the effect on a married woman of the recording of a deed would be precisely the same in imparting notice to her as it would be upon any other person whomsoever. The statute seems to sanction this hitherto

entertained view, for it says that "every such instru-
ment," etc., "shall impart notice to all persons of the
contents thereof." R. S. 1889, sec. 2419.

In *Jones v. Kearney*, 1 Dr. & War. 134, the lord
chancellor of Ireland held that "a *feme covert*, or an
infant, is just as much bound by notice as an adult."

If the authorities I have cited are to be deemed the
safer guides on the point mentioned, and are, in con-
sequence, to be followed rather than the majority opin-
ion, then we have presented a clear case of a married
woman chargeable and charged with notice of an out-
standing legal title in a person other than her proposed
grantor, and, therefore, she was put on inquiry as to
the nature and extent of that grantor's title. This
being true, a *prima facie* case was made out against
her demanding that she exonerate herself from the atti-
tude in which she was placed, by making all proper
and legitimate inquiries as to the nature and extent of
Mrs. Hickman's title. In such a case when you prove
that a person is put on inquiry, then the burden is
shifted and it belongs to him to shift the burden, thus
cast upon him, off his own shoulders; to exonerate
himself by rebutting the presumption thus raised against
him by showing that he pushed all reasonable inquiries
to their legitimate conclusion, but gained no informa-
tion. If, on the other hand, he failed to make inquiry
or to prosecute it with due diligence, the presumption
remains operative and the conclusion of notice becomes
*absolute*. 2 Pomeroy's Equity Jurisprudence [2 Ed.],
sec. 607.

And it is the duty of a purchaser who has been put
on inquiry to seek information from his *grantor*, and a
failure to do this, generally shows lack of due care and
diligence in making inquiry. *Ib.*, p. 840, note 2. And
there are cases which hold that such a purchaser who
neglects questioning his grantor will be charged with

notice of all he could have learned. *Sergeant v. Ingersoll*, 7 Pa. St. 340; s. c., 15 *Ibid.* 343; *Espin v. Pemberton*, 3 De G. & J. 547.

In the first of these cases, GIBSON, C. J., observed: "A purchaser without notice must appear to have acted, not only with good faith, but with extreme vigilance, for equity refuses to protect the careless and the slothful;" and thereupon he rules Mrs. Sergeant chargeable with notice because she failed to make inquiry of her grantor what the legal title was, outstanding in another; and because she failed to make a like inquiry of the one holding the oustanding legal title.

Numerous authorities illustrate the position that, in many circumstances, an examination of the *records* and questioning the grantor, would not be sufficient, unless the inquiry were further prosecuted among *third persons from whom information could probably be obtained*, and that a neglect to make such inquiry, though prompted by the situation and demanded by the circumstances, had not been made, and leaving the party whose duty required "due inquiry" still chargeable with constructive notice. 2 Pomeroy's Equity Jurisprudence, p. 841, note 3, and cases cited.

Applying to the case at bar the principles heretofore announced, it will be readily seen that Mrs. Green did not fulfill the true measure of diligence in making inquiries of her grantor as to the title, nor of Lakenan; indeed, she repels the idea and denies his statement that she heard him say anything concerning the situation and nature of the title. Nor does she pretend that she even so much as *asked Mrs. Hickman a single question* as to the nature and extent of her title, and as to the why and wherefore of the title remaining outstanding in Lakenan, and this, too, although she had been in to see Mrs. Hickman and the house, two or three weeks before she got the deed or traded. Who

can doubt that, had Mrs. Green asked Mrs. Hickman about the title, or that if Lakenan had been asked in whom the title was, she would have received a reply adequate to all the demands of due diligence, honesty and good faith. But she sedulously refrained from making such inquiries, and, therefore, stands before us charged with the constructive notice which she received at the outset, and with the presumption aforesaid, which it was her duty to rebut, unrebutted.

2. A like line of remark and authorities apply to the possession of Mrs. Hickman; she had been in the open and notorious possession of the premises for three years, acting as the owner of the same and the owner of an unrecorded deed to herself for life, remainder to her bodily heirs. This being the posture of affairs, a duty was devolved on Mrs. Green to make inquiries of her intended grantor as to the nature and extent of her title, and also of Lakenan, the record owner, similar to those mentioned in the next preceding paragraph. Authorities supporting this view are there referred to; they exist in abundance.

In *Vaughn v. Tracy*, 22 Mo. 417, 25 Mo. 318, it was ruled that possession and apparent ownership brought home to the second purchaser is evidence of knowledge in such second purchaser of a prior unrecorded deed to the occupant, as ought, in *ordinary* circumstances, to satisfy a jury that the second purchaser purchased with knowledged of the prior deed. This ruling has been constantly followed ever since, and cases showing this are cited in the former opinion herein delivered.

Why should this case be deemed *dehors* the familiar rule? What *extraordinary* circumstances are there disclosed in this record which forbid its application in the present instance? There are none, and

Mrs. Green on this score also, remains charged with the constructive notice arising from occupancy and apparent ownership, because she has not rebutted the *prima facie* case made against her by showing proper, though fruitless, inquiries made. This fact of the prior unrecorded deed could not be ferreted out by searching the *records;* it rested alone in *parol*, and could only have been developed and unearthed by *oral inquiry*; an inquiry which Mrs. Green was as competent herself to make as anyone; but any inquiry which neither she nor anyone for her attempted to make. It is iterated, however, with great insistence, that the *records were searched, an abstract made and the title examined*, but this idea of *searching the records for an unrecorded deed, and calling it due inquiry to do so*, reminds one of the anecdote of Nelson who, bidden to withdraw his vessel from a naval battle when he should see displayed a signal from his admiral's ship, and, being told that the signal flag was flying, clapped the glass to his *blind eye*, and said, *"I don't see the signal!"*

In the very recent case of *Freeman v. Moffit*, 119 Mo. 280, the cases of *Vaughn v. Tracy, supra*, and nearly all of the subsequent cases in this court on this subject of evidence of constructive notice of a prior unrecorded deed arising from possession of land by an apparent owner, and of the duty of inquiry in such circumstances, were cited, quoted from, discussed and reaffirmed. Among them was the case of *Leavitt v. LaForce*, 71 Mo. 353, from which this extract is made: "If Winans had ventured to examine the land upon which he contemplated taking an incumbrance, which he did take on the twenty-sixth of March, immediately upon his return home, he would have had an opportunity to ascertain from Morton, who was in possession as Leavitt's tenant, the true state of the title, and under whom he held. * * * It was his duty when

offering himself as a witness to have left nothing unexplained which would induce unfavorable inferences in regard to his *bona fides*."

In *Freeman's case, supra,* an action of ejectment, Wilkinson was in possession, and had thus been in possession by his tenant for nearly a year, at the time plaintiff came down to Polk county, examined and bought the land. The lower court *expressly found plaintiff to be an innocent purchaser,* but this court speaking through the learned author of the majority opinion, held that such finding was an *error of fact and an error of law,* remarking, after quoting the prevalent rule from *Vaughn v. Tracy, supra,* etc., that "we think there was strong evidence of notice to plaintiff of Wilkinson's title when he bought and that if he had not ignored all the ordinary rules of prudence, he would have learned of the true state of the title, and that Wilkinson was the owner. The fact of Moffitt's possession put him upon inquiry and he should not have blindly shut his eyes to the truth as it existed, and the court should have so declared in an instruction."

I am entirely unable to see why the same principle on similar facts should not dominate the present case, and Mrs. Green be held a purchaser with notice as a matter of law, she not having made the proper inquiries, and, therefore, chargable with constructive notice. Nor does it matter that the lower court expressly found that Mrs. Green was an innocent purchaser. This was done, as already seen, in *Freeman's case,* by the lower court, but its finding was rejected and repudiated by this court, even in an action at law; and in the quite recent case of *Blount v. Spratt,* 113 Mo. 48 (MACFARLANE, J., speaking for the court), it was ruled that equity cases are substantially triable *de novo* in this court, and that this court would not be

bound by the finding of the lower court, nor would the supervisory control of this court over the lower court be *abrogated by such findings*. To the same effect is *Hamilton v. Armstrong*, 120 Mo. 597.

Holding these views, I am constrained to dissent from the majority opinion. I hold that the facts in this record show the clearest and strongest case of notice of any record I have ever examined. BRACE and BURGESS, JJ., concur in the foregoing opinion.